WRIGHT v. MARY GALLOWAY HOME FOR AGED WOMEN.

(Division B. April 10, 1939.)

[187 So. 752. No. 33618.]

**Lester G. Fant, Sr., & Jr.,** of Holly Springs, for appellant.

Charles M. Crump, of Memphis, Tenn., for appellee.

202

Argued orally by **Lester G. Fant, Jr.**, for appellant and by **Chas. M. Crump**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

This is an appeal by Wright, as administrator of the estate of Mrs. Eda J. McClain, from a decree of the chancery court of Marshall County holding to be valid a claim of the Mary Galloway Home For Aged Women probated against said estate.

There was no dispute about the material facts. They were embodied in a stipulation by counsel representing the parties, which follows, leaving off signatures:

"It is stipulated and agreed by and between counsel for C. H. Wright, Administrator, and for the Mary Galloway Home for Aged Women, Claimant, that the following facts are to be accepted as proved, and may be used as evidence by any of the parties to this law suit without the necessity of further proof of the same.

"The Mary Galloway Home for Aged Women is a nonreligious charitable organization incorporated under the laws of the State of Tennessee, maintaining on the corner of Monroe Avenue and Manassas Street, Memphis, Tennessee, a two-story building which contains 29 single rooms for inmates, a sun parlor, a living room and dining room, and employing a matron and five additional persons for the purpose of furnishing to aged women room, board, laundry, practical nursing and entertainment. The revenue of the Home consists of voluntary contributions, an allotment from the Community Fund of Memphis, and such sums as are left by wills or all collected under agreements such as the one attached hereto,

but the collections under these agreements are necessarily small as only women dependent on charity are admitted to the Home. The cost of providing for each inmate is greatly in excess of the $10.00 per month fee charged, and is more nearly consistent with the $10.00 per week directed to be paid out of the estate under the terms of the agreement signed by each inmate upon her admission to the Home, copy of which is attached hereto.

"Mrs. Eda J. McClain entered the Home on or about September 28, 1933, and remained an inmate therein until a very serious heart ailment, from which she suffered the entire time she was at the Home, necessitated her removal to the John Gaston Hospital of Memphis on July 9, 1936. She remained at the Hospital in a critical condition until her death on July 30, 1936.

"On February 21, 1934, Mrs. McClain executed an agreement, copy of which is attached hereto. Mrs. McClain paid to the Home $20.00 admission fee, and the sum of $460.00 toward her board expense. She was an inmate of the Home for 33½ months, or a period of 145 weeks. On the basis of the $10.00 per month fee required to be paid toward board expense, at the time of her death she had a credit of $125.00.

"Her funeral bill amounted to $200.00, and is a preferred claim. In addition to her funeral expenses, Mrs. Lucy Matthews Jones probated a claim for $187.44; the Doctor for the last illness $12.00; Hamilton Harris $1.00; making a total of $400.44 indebtedness against the estate, exclusive of the cost of administering the estate.

"Her entire personal estate consisted of $145.55 deposited to her credit in the Bank of Holly Springs, a legacy of $250.00 left her by her cousin, Charles Oliver, and a claim for the above described credit with the Home of $125.00, making a total personal estate of $520.55. Exclusive of the expenses of administering the estate the indebtedness is $400.44, leaving a net personal estate of $120.11, which is more than enough to pay the costs

of administration. There will remain an undetermined amount of intestate personal estate.

"The only other property that she had consisted of her one-half interest in the old homestead of her father, W. H. Jones. The other half belongs to the widow of her brother, Mrs. Lucy Matthews Jones."

The contract signed by Mrs. McClain after entering the Home follows: "Having been admitted as an inmate of the Mary Galloway Home for Aged Women of Memphis, Tenn., I, the undersigned, do hereby, in consideration of my admission to the said Home, agree to abide by all the rules, regulations and terms of admission, and to so conduct myself as not to interfere with the peace, harmony and good order of the Home, under penalty of dismission and the forfeiture of any sum of money which may have been paid for admission, all in the discretion of the Circle.

"Should I now own property of any kind, or should I at any time after my admission to the Home become possessed, by inheritance or otherwise, of any property of any kind, or of money or other securities, and still continue to be an inmate of the Home until my death, I hereby promise and agree to leave all such property or funds to the Home. Should I fail to do this the Home shall be entitled to the sum of $10.00 per week board for the entire time which I shall so remain in the Home, less the fee of $10.00 per month which I have paid, and this shall be a just claim against my estate." The contract was not signed by the Home, but by Mrs. McClain alone. It was also sworn to by her before a notary public, in addition to being attested by two subscribing witnesses. She died without making a will, and the Home probated its claim under the last clause of the contract, which provides that on her failure to make a will "the Home shall be entitled to the sum of $10.00 per week board for the entire time which I shall so remain in the Home, less the fee of $10.00 per month which I have paid, and this shall be a just claim against my estate".

It is argued on behalf of Mrs. Wright's estate that the contract was unilateral—that there was no reciprocal promise on the part of the Home, and, therefore, it had no binding force on her. It is true that the contract was unilateral in its inception. It became bilateral, however, because of its performance on the part of the Home. In other words, Mrs. McClain's promise was met by the Home with performance. Consideration for a promise may be ''an act other than a promise''. Rest. Law, Contracts, Sec. 75.

It is argued further for the administrator that the Home's claim against the estate is invalid because Mrs. McClain agreed to pay it by making a will devising and bequeathing to the Home all real and personal property which she might own at her death; that such a will as to real estate is violative of Sec. 269 of our Constitution (Sec. 3564, Code 1930) commonly known as Mortmain Provisions. They provide, among other things, that a devise of land or any interest therein to be appropriated to charity uses or purposes shall be null and void. In other words, it is contended that the contract to make such a will is not only void, but, in addition, discharged the indebtedness of Mrs. McClain to the Home for her care, maintenance, and support. We are of the opinion that position is not sound. The failure to make the will did not affect Mrs. McClain's obligation to the Home. It was left outstanding and unpaid. If a will had been made violating the Mortmain Provisions of the Constitution and Statute and for that reason held void, whether the discharge of the indebtedness would have thereby resulted is unnecessary to decide. That question is not here. We have here a valid indebtedness and a contract to pay it by means of a void will, at least in part, and on failure to make such a will the debt shall continue as a valid claim. There is no infirmity in the obligation to pay.

The contention that Mrs. McClain's obligation to pay for her care in the Home did not arise because she did

not continue as an inmate therein until her death is without merit. The Home, on account of serious heart trouble from which she was suffering, placed her in the John Gaston Hospital in Memphis to be treated therefor. She died after being there about three weeks. We think while there she was really still an inmate of the Home. If she had recovered, she would doubtless have returned.

Affirmed.