Mary B. Stocking, by Gilbert Monteiro, *Gdn.* vs.
Marie C. Hall.

NOVEMBER 13, 1953.

Present: Flynn, C. J., Baker, Condon and O'Connell, JJ.

FLYNN, C. J.    The plaintiff Mary B. Stocking by her guardian commenced this action by a writ in debt on bond, and being in doubt filed a declaration containing counts in debt on bond, covenant, assumpsit on the contract, and the common counts, under general laws 1938, chapter 509, §1. To each count defendant filed a plea of the general issue and also to the first, third and fourth counts special pleas to the effect that nonperformance of her obligation as expressed in the bond was excused by the intervention of an act of God or of law.    After the issues had been duly joined in the pleadings the case was tried in the superior court where a jury returned a verdict for the plaintiff in the amount of $2,450.    Subsequently the trial justice denied defendant's motion for a new trial, and defendant and plaintiff each prosecuted a bill of exceptions to this court.

It appears that since March 12, 1947 plaintiff continuously has been confined as a patient under treatment at the State Hospital for Mental Diseases.    Therefore this action was brought by her through Gilbert Monteiro, the duly appointed guardian of her person and estate.    In addition,

the trial court appointed a guardian *ad litem*. After the case was argued in this court said Monteiro died and Henry C. Lind, being duly appointed as his successor, has been substituted to continue this proceeding.

The evidence shows among other facts that on September 18, 1946 Mary B. Stocking, the plaintiff, who was about seventy-nine years of age, entered into an agreement with defendant, who conducted a duly licensed convalescent home at 438 Hope street in the city of Providence. That agreement, which is involved here, was entitled "Bond For Maintenance And Support." In the first paragraph defendant in the usual form acknowledges herself as firmly bound in the sum of $3,000 to the plaintiff, her executors, administrators and assigns. The second paragraph reads as follows:

"Whereas, the above bounden Marie C. Hall, in consideration of the sum of Three Thousand and no/100 ($3000.00) Dollars, to her in hand paid by the above named Mary B. Stocking, has agreed to maintain and support the said Mary B. Stocking at the above mentioned Hall Convalescent Home with room, board and nursing care during the lifetime of the said Mary B. Stocking (it being expressly understood and agreed by the said Marie C. Hall and Mary B. Stocking that such maintenance and support shall not include clothing, medicines, medical attention other than the nursing care heretofore mentioned, or other expenses for medical appliances, or otherwise)."

In the third paragraph the condition or covenant is stated in the usual form in accordance with the above-mentioned premises and then closes as follows:

"In Witness Whereof I have hereunto set my hand and seal this 18th day of September, A. D. 1946.
                              [signed]   Marie C Hall   [seal]
Signed, sealed and
delivered in the
presence of:
[signed] Mrs. C. Feole
The terms, conditions and

agreements incorporated in
the above bond are hereby
approved and accepted:
[signed] Mary B. Stocking"

It appears that pursuant to the agreement plaintiff lived at defendant's above-described home and received board, room and nursing care as referred to in the bond or agreement until February 1947. At that time defendant became concerned as to plaintiff's condition and alleged violent conduct, which according to her interfered with the care of plaintiff and other patients and also endangered the attendants. Apparently at the guardian's suggestion defendant telephoned to plaintiff's niece to ask her advice, and as a result the niece authorized defendant to obtain a doctor for plaintiff.

Pursuant thereto defendant called in a doctor, who was a psychiatrist, but without specific report to or any further authorization from the niece or guardian, the defendant apparently later called in another doctor of her own selection. As a result, plaintiff was taken to the Charles V. Chapin Hospital for observation and temporary care, and on March 12, 1947, upon an examination and certification by two doctors, she was committed under G. L. 1938, chap. 71, §1, to the State Hospital for Mental Diseases where her ailment was diagnosed as "Senile Psychosis, Paranoid type."

The plaintiff has remained continuously under medical care at the latter institution and was confined there at the time of trial. While some improvement in certain aspects of her condition was noted by the doctors there, it was testified that she was not in condition to be released, and such testimony in effect indicated that she would not recover sufficiently to be released with safety to herself and others.

There is other evidence for plaintiff to the effect that her commitment was not the result of authorization by her or anyone in her behalf, but was the personal desire and act of the defendant to abandon a contract that had turned out to be expensive and burdensome. It also appears that after

plaintiff's commitment defendant sold her home at 438 Hope street where the services were to be rendered; that for a period she did not conduct any convalescent home; and that at the time of trial she operated such a home at 56 Doyle avenue for which she held no state license.

The contentions in support of defendant's exceptions are founded chiefly on the claim that this is solely an action of debt on bond; that other counts, especially those in assumpsit, are improperly joined and should have been stricken out or withdrawn from the jury on defendant's motion at the conclusion of the evidence; that for such reason evidence as to the value of services already rendered by defendant was erroneously admitted under the counts in assumpsit; and that parts of the charge relevant thereto were also improper for the same reason and constituted prejudicial error.

In our opinion the basis for these contentions is erroneous. Nowhere in her brief or argument does she mention, much less explain away, the effect of G. L. 1938, chap. 509, §1, which is relied on by plaintiff in joining such counts. That statute reads in part as follows: "When a plaintiff has reason to doubt whether his action should be in covenant, debt, or assumpsit, he may bring either action and may join therein counts in covenant, debt and assumpsit, or any of them * * * and the defendant in all such cases shall plead to the several counts according to the practise at common law, and judgment may be entered upon the counts under which the plaintiff may be entitled to recover." These express provisions and their interpretation in cases thereunder should not be ignored. If applied here the defendant's contentions as to the admission of evidence under the assumpsit counts, which are treated under exceptions numbered 7 to 11 inclusive, and the denial of her motion to strike or withdraw such counts, appearing under exception 17, cannot be sustained. *Sowter* v. *Seekonk Lace Co.*, 34 R. I. 304; *Librandi* v. *O'Keefe*, 44 R. I. 49, and cases cited. These exceptions are overruled.

It is further argued by defendant under exception 18 that the trial justice erred in denying her motion for a directed verdict, claiming that the evidence is undisputed; that the instrument is clearly a bond and is unambiguous; and that the only question is one of law for the court, since performance of the obligation of the bond was excused by an act of God or of law.

We do not agree with this contention. Assuming, without deciding, that on the evidence there was no issue of fact for the jury's consideration and that the action was determinable solely on the count in debt on bond, the defendant's motion for a directed verdict was properly denied. The general rule at early common law was to the effect that where the obligation was created by the parties themselves and not by law, an obligor under a bond or covenant was not excused from performance thereof by an intervening act of God unless he expressly provided in the instrument an exemption from liability in such an event. See 12 Am. Jur., Contracts, §§366-369, p. 935 *et seq.;* 17 C.J.S., Contracts, §463, p. 952 *et seq.;* 6 R.C.L., Contracts, §367, p. 1001 *et seq.,* and cases cited. There is no such provision for exemption in the instrument in question, and if we apply the common-law rule defendant here would not be entitled to a directed verdict.

On the other hand, if we apply the law as found in later cases, which generally recognizes certain so-called exceptions to the common-law rule, we reach the same conclusion. In this respect defendant apparently misconceives the extent to which courts have relaxed the common-law rule. None of the cases cited by her supports the extreme view here advocated. It is true some of them recognize the principle that in proper circumstances an obligor may be excused from *specific* performance of his covenant where an act of God has rendered performance thereof impossible, or where an obligation which was legal at the time of agreement later becomes illegal by an act of law and amounts to more than a temporary suspension. But we do not find

in those cases any logic or law which requires a conclusion that an obligor as here may recover or retain the full consideration for services which he has not performed and where such performance is made impossible by an act of God or of law.

The cases in this state, though not precisely the same in all respects, tend to follow the general weight of authority in applying a different principle. In *Parker* v. *Macomber,* 17 R. I. 674, the issue determined was whether a person, who has rendered a part of the personal service under an entire contract which an act of God has prevented him from fully performing, can recover on implied assumpsit the fair value of the services rendered. The court there applied the principle that the loss in such circumstances must be adjusted according to the nature and scope of the contract and held that recovery of the fair value of the services actually rendered was supported by both reason and authority. For illustrations of a similar principle and application see 12 Am. Jur., Contracts, §347, p. 909. See also *Preble* v. *Preble,* 115 Me. 26.

In our judgment the reasoning in the *Parker* case implicitly precludes such an obligor from recovering more than the fair value of the services actually rendered. By the same token he may not retain the full consideration paid for services which he has not performed and which are impossible of performance because of a supervening act of God or of law. A similar principle seems to have been applied in kindred cases. See *Cinquegrano* v. *Clarke Motors, Inc.,* 69 R. I. 28; *DiBiasio* v. *Ross,* 43 R. I. 78; *Connell* v. *Savings Bank of Newport,* 47 R. I. 60. See also *Yerrington* v. *Greene,* 7 R. I. 589.

Whether the result is reached by treating those cases as exceptions to the common-law rule, or by necessarily implying from the palpable nature and scope of a particular agreement an intention of the parties not specifically expressed therein, or by other reasoning, the underlying principle seems to involve essentially equitable considerations. In a

proper case the law seeks to prevent its being used to provide unjust enrichment on the one hand and to perpetrate an injustice on the other. This is avoided by seeking and carrying out the probable intent of the parties, as gathered from the nature and scope of the agreement, where neither party has been in default and where the alleged act of God or of law constitutes in effect a substantial and permanent interference with the execution of the full agreement.

Similar views are applied in many other jurisdictions, an example of which is *Board of Education* v. *Townsend,* 63 Ohio St. 514. In that case a corresponding defense was interposed in a suit to recover payment for services under a contract which had become impossible of performance through no fault of the plaintiff or defendant. In refusing to accept an extreme contention, such as is advanced by defendant here, that court stated: "The act of God may properly lift from his shoulders the burden of performance, but has not yet been extended so as to enable him to keep the other man's property for nothing." For recognition of that principle see also *Remy* v. *Olds,* Cal., 34 Pac. 216; *Doster* v. *Brown,* 25 Ga. 24; *Vancleave* v. *Clark,* 118 Ind. 61. See also 6 R.C.L., Contracts, §367, p. 1001 *et seq.;* 12 Am. Jur., Contracts, §§366-369, p. 935 *et seq.* Therefore under either view of the applicable law the defendant's exception 18 to the denial of her motion for a directed verdict must be overruled.

The defendant also prosecutes certain exceptions to various portions of the charge, but as stated in her brief these were taken to preserve consistently the basic theory of defendant's case, namely, that her nonperformance was excused because performance was impossible through an act of God or of law. In view of what we have already held as to the pertinent contentions of the defendant in that regard, we do not find in the parts of the charge thus excepted to any prejudicial error as claimed by defendant. These exceptions are overruled.

For the same reason defendant's exception 27 to the denial

of her motion for a new trial must be overruled. The defendant thereunder consistently makes the same argument to the effect that the case should have been treated as one solely upon the count in debt on bond; that she was entitled to have another jury or court pass upon the chancerization of the bond in any event; and that the trial justice's decision was contrary to the law and evidence. She has pointed out no evidence which the trial justice overlooked or misconceived, and we find from an examination of the transcript that the trial justice passed his independent judgment on the motion. In the circumstances we cannot say that his decision approving the verdict was clearly wrong and therefore defendant's exception is overruled. All other exceptions not briefed or argued are deemed to be waived.

The plaintiff has also prosecuted a bill of exceptions including an exception to the failure of the trial justice to direct a verdict for the plaintiff. However, she expressly represents that such bill was filed out of abundant caution; that she is satisfied with the verdict which responds clearly to at least one count in assumpsit and evidence thereunder; and that her bill need not be considered unless this court sets aside the verdict for the plaintiff as rendered by the jury. Since that verdict, which was approved by the trial justice, has been sustained, we need not consider the plaintiff's bill of exceptions.

All of the defendant's exceptions are overruled, the plaintiff's exceptions are overruled *pro forma,* and the case is remitted to the superior court for entry of judgment for the plaintiff on the verdict.

### ON MOTION FOR REARGUMENT.

#### DECEMBER 10, 1953.

PER CURIAM. After our decision in the above case the defendant asked and received permission to file a motion for reargument. Pursuant to this permission she has filed such a motion, setting out therein certain reasons on which she bases her contention that justice requires a reargument

of the case. We have carefully considered those reasons and we are of the opinion that they are without merit.

Motion denied.

*Ambrose W. Carroll*, for plaintiff.

*Joseph Mainelli*, for defendant.