Mary M. CONNELLY, Committee of Mary E. McCauley, Appellant,

v.

**" he METHODIST HOME OF the DISTRICT OF COLUMBIA** and Metropolitan Life Insurance Company, a corporation, Appellees.

No. 3122.

District of Columbia Court of Appeals.

Argued March 4, 1963.

Decided May 3, 1963.

Ross O'Donoghue, Washington, D. C., with whom Mary M. Connelly, Washington, D. C., was on the brief, for appellant.

Thomas M. Raysor, Washington, D. C., for appellee Methodist Home.

Henry H. Paige, Washington, D. C., with whom Arthur P. Drury, John M. Lynham and John E. Powell, Washington, D. C., were on the brief, for appellee Metropolitan Life Ins. Co.

Before HOOD, Chief Judge, MYERS, Associate Judge, and CAYTON (Chief Judge, Retired), sitting by designation under Code, § 11–776(b).

MYERS, Associate Judge.

Here for review is the action of the trial court in denying appellant's motion for summary judgment for the proceeds of a matured endowment policy issued to her ward by the Metropolitan Life Insurance Company and the granting to appellee Methodist Home of its like motion for the same purpose.

In April, 1958, Mary E. McCauley was admitted to the Methodist Home of the District of Columbia, a nonprofit, charitable organization whose objective is to provide and maintain a home for the aged, needy and worthy members of the Methodist Church in this vicinity. By the terms of the admission agreement and the by-laws which are made a part thereof, and in con-

sideration of being admitted to the Home, Miss McCauley agreed to irrevocably assign and relinquish to the Home for its sole ownership all legacies, funds and credits which she possessed or to which she would thereafter become entitled. She also executed a will naming the Home as sole beneficiary of her estate and gave a power of attorney appointing certain officers of the Home her "true and lawful attorney in fact, coupled with an interest and irrevocable," with power, among others, to collect and receive any insurance due her or thereafter acquired by her. In compliance with the by-laws, she assigned to the Home an endowment policy issued by appellee Metropolitan Life Insurance Company. Premiums on this policy were paid by the Home until the , policy matured March 1, 1960.

For approximately fourteen months Miss McCauley resided at the Home and was cared for there. The record is silent as to the exact cost of her maintenance during this time. In June of 1959 on the petition of the Home she was adjudged of unsound mind and committed to Saint Elizabeths Hospital. The by-laws (which Miss McCauley in her admission application admitted she had read and understood and agreed to abide by) specifically provided that any person admitted to the Home who shall become, in the opinion of a physician, mentally incapacitated, was to be removed from the Home to an institution or hospital *for the duration of the mental illness.*

Appellant, who was appointed committee for Miss McCauley, sought to recover the proceeds of the matured endowment policy paid by appellee insurance company to the Home pursuant to the aforementioned assignment. Cross motions for summary judgment were filed by both the Home and the Committee resulting in judgment favorable to appellees.

The primary question is whether the admission contract and the power of attorney were revoked by adjudication of Miss McCauley's insanity and her subsequent commitment for treatment to Saint Elizabeths Hospital.[1] The trial court held the admission agreement of the parties did not fail for want of consideration and that the Home was, therefore, entitled to the proceeds of the endowment policy. We are in accord.

There is no specific provision in the admission agreement or in the by-laws concerning the handling of a member's funds during a period of mental illness and transfer for care to another institution equipped for that purpose, but we are satisfied that Miss McCauley, in executing and delivering to the Home all necessary documents required to effect her admission, intended to make a complete and permanent assignment to the Home of all her property, monies, and assets and to divest herself of all title and interest in the ownership and proceeds of the insurance policy.

The general rule at early common law was that where the obligation was created by the parties themselves and not by law, an obligor under a covenant was not excused from performance thereof by an intervening act of God unless exemption from liability in such event was expressly provided in the instrument. 12 Am.Jur., Contracts §§ 366–369, p. 935 et seq.; 17 C.J.S. Contracts § 463, page 952 et seq.; 6 R.C.L. Contracts § 367, p. 1001 et seq., and cases cited. Certain so-called exceptions to this common law rule have been recognized but the underlying principle seems to involve equitable considerations in a proper case. Primarily the law seeks to carry out the probable intent of the parties as gathered from the nature and scope of their agreement.

1. Although the by-laws of the Home do not require that it pay for Miss McCauley's treatment and care at the hospital, the Committee has been permitted to collect for that purpose her ward's monthly retirement check from the Government which had previously been paid to the Home.

■ In the present case the contract between Miss McCauley and the Home was definite, certain and wholly unambiguous and bound both parties in respect to the possibility that she might become mentally ill after admission to the Home. Hence her transfer to an institution equipped to handle mental patients did not deprive the Home of its right to the proceeds of the endowment policy, nor did it terminate the responsibility of the Home in relation to Miss McCauley, for should she recover the Home would be obligated to take her back as a resident. It is also under a continuing obligation to assume, upon her death in the Home or while under treatment at a hospital, the expenses of her interment.

In Dalton v. Florence Home for the Aged, 154 Neb. 735, 49 N.W.2d 595, a case involving similar facts, the court said, citing with approval Wright v. Mary Galloway Home for Aged Women, 186 Miss. 197, 187 So. 752:

> "It was not the intention of the Home to terminate deceased's contract when it took him to the hospital because of his serious illness and merely taking him there for that purpose certainly did not have that effect as a matter of law."

Cases cited by the appellant are distinguishable either because the contract terms were different,[2] or the contract was terminated at the time the incompetent was committed,[3] or there had been a refusal to support and care for the aged person.[4]

Accordingly, we hold that the contract governing the admission of Miss McCauley as a member of the Home was not revoked by her subsequent commitment to Saint Elizabeths Hospital.

Affirmed.

2. Chappell v. Odd Fellows' Home, Etc., 85 R.I. 429, 132 A.2d 72, 133 A.2d 640.

3. Stocking, by Monteiro v. Hall, 81 R.I. 168, 100 A.2d 408, 850.

4. Swartz v. Hafer, 354 Pa. 320, 47 A.2d 224.