CASE 80—PETITION—EQUITY—JANUARY 28.

# Kinney, &c., v. Kinney's Executor, &c.

APPEAL FROM MARSHALL CIRCUIT COURT.

1. A DEVISE TO A CHURCH, " to be applied to foreign missions," is within the scope of our statute permitting devises to charitable uses, and is valid.

   The provision of the statute that no church shall be capable of holding the title to exceeding fifty acres of land does not apply to a devise which merely gives the property to the church in trust, to be applied by it to a charitable purpose, the restriction in the statute being intended to prevent a church from taking or holding for its own use more than fifty acres of land.

2. SUCH A DEVISE IS NOT VOID FOR INDEFINITENESS or vagueness, as the language used by the testator indicates definitely the purpose to which he desired his bounty to be applied.

GILBERT & REED AND R. P. QUARLES FOR APPELLANTS.

A devise of land to a church to be applied to foreign missions is not within chapter 13 of General Statutes, and is for that reason void. (3 Bush, 373; Story's Equity, sections 1171, 1183, 1184.)

W. W. ROBERTSON AND SMITH FOR APPELLEES.

Section 3 of chapter 13, General Statutes, does not apply to a devise to a church in trust for charitable uses.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Benjamin Kinney died testate in 1886, being then the owner of one hundred acres of land.

His will provides: "I do will and bequeath to the Methodist Episcopal Church, South, to be applied to foreign missions, all of my property, real and personal, after the payment of my just debts, * * * * for their use and benefit exclusively." He was never married, and his collateral kindred are his heirs-at-law. They now claim that the devise lapsed and became inoperative as to the land; and that they are, therefore, entitled to it. This claim is based upon the fact that our statute relating to charitable uses forbids a church from taking or holding the title to over fifty acres of land; and its construction is, therefore, involved.

The statute 43 Elizabeth, chapter 4 (1 M. & B., page 308), and which is emphatically known as the one relating to charitable uses, recognized and permitted the holding of estate without limit by and for certain charities therein named, among which were churches. It was *pro tanto* a repeal of the mortmain acts; and because of its general character this court held, that under the rule adopting as a part of our law all English statutes of a general nature enacted prior to 4th James I, it became a part of our law. It was held to be in force in this State in 1834, in the case of Gass & Bonta v. Wilhite, &c., 2 Dana, 170; and so remained until the adoption of the Revised Statutes in 1852, as

will appear by a reference to the cases of Moore's Heirs v. Moore's Devisees, 4 Dana, 354, and Attorney-General v. Wallace's Devisees, 7 B. M., 611, both of which were decided prior to the last-named date. By virtue of it, such devises in charity as were embraced by it were held valid in this State without regard to their extent. Actuated, doubtless, by a belief that public policy required a limit to this boundless right of acquisition by religious societies, the Revised Statutes, page 177, repealed this law, and by section 1 of chapter 14 provided that all devises for the benefit of certain charities therein named, among which are churches, should be valid, save as "hereinafter restricted;" and as a sort of mortmain act, section 3 of the same chapter provides: "No church or society of Christians shall be capable of taking or holding the title, legal or equitable, to exceeding fifty acres of ground; but may acquire and hold that quantity for the purpose of erecting thereon houses of public worship, public instruction, a parsonage, a grave yard and a horse pound."

The present General Statutes contain, in substance, the same provisions. (General Statutes, chapter 13.)

It is evident that the purpose of the statute was to prevent the accumulation in the hands of the churches of large landed estates. It was dictated by the same idea as to public policy which prompted the English mortmain act of 9th George II. Such a result would not only tend to cripple the progress and industry of the country without furthering the cause of Christianity, but would furnish a means and be likely to create a disposition upon the part of the church to meddle and interfere in matters of State.

Looking then to the purpose of the statutory restriction, it is evident that the devise now in question is not embraced by it, either in spirit or letter. It merely gives the property to the church in trust, to be applied by it to a charitable purpose. The restriction in the statute above cited was intended to prevent a church from taking or holding for *its own use* more than fifty acres of land.

This devise for charity is within the scope of our statute permitting such uses. Section 1 of chapter 13 of the General Statutes, which authorizes them, subject to the restriction already named, says : "All grants, conveyances, devises * * * of any lands * * * for the relief or benefit of aged or impotent and poor people, * * * churches, * * * or for *any other charitable or humane purpose*, shall be valid."

The objection that the devise is so vague that the intention of the testator can not be executed is not well taken. The trustee is named in the will, and the language used by the testator indicates definitely the purpose to which he desired his bounty to be applied.

So far have the English courts gone in favoring charities, that where it is evident a testator intends one by devise, but leaves the object to the selection of a trustee, who dies without making it, they will lay hold of it, and administer it under *a scheme*. (Mills v. Farmer, 1 Merivale, 55.)

Or if the specified objects cease to exist, they will remodel the charity ; and it will not be allowed to fail, if it be apparent that charity was intended, although the particular mode pointed out may be impossible of execution. (2 Story's Equity, sections 1170-1181.)

It is true that the doctrine of *cy pres*, as broadly administered by the English courts, has been rejected in this State; but if it were equally in force here, there would be no need of resort to it in this instance, because the donor has definitely fixed the purpose to which his charity is to be applied; and while this court has seen fit not to aid charities to the extent of making or changing a will, and has refused to go so far as to apply the testator's bounty to an object never contemplated by him, and to which he probably would not have contributed, yet because they are blessings in which all are more or less interested, they are looked upon with peculiar favor by our courts. They will not be allowed to fail for the want of a trustee; and if their object, as intended by the donor, be ascertainable and consistent with law and public policy, they will be upheld.

Judgment affirmed.