MISSISSIPPI COLLEGE, et al. *v.* MAY, et al.

No. 40969 February 9, 1959 108 So. 2d 703

202

*Wells, Thomas & Wells, Milton H. Mitchell, Cecil F. Travis, Willis T. Matthews,* Jackson; *Brunini, Everett, Grantham & Quinn,* and *Dent, Ward, Martin & Perry,* Vicksburg, for appellants.

204

*Emmette P. Allen,* Brookhaven; *J. T. Drake, Jr.,* Port Gibson, for appellees.

*Green, Green & Cheney,* Jackson, Amicus Curiae.

ETHRIDGE, J.

This case involves issues concerning interpretation and application of the mortmain provision of the Mississippi Constitution, Sec. 270, and the mortmain statute

enacted pursuant to it. Miss. Code 1942, Sec. 671. These enactments limit the amount and time of bequests or devises by will to charitable, religious, educational or civil institutions, and the period which such institutions may hold a devise of land.

Appellees, Felix May and the other heirs at law of Dr. J. V. May, filed a bill of complaint in the Chancery Court of Claiborne County against appellants, defendants below, Mississippi College, a corporation; the Foreign Mission Board of the Southern Baptist Convention, a corporation; Anderson-Tully Company; and several of the heirs of Dr. May who did not join in the bill of complaint, but who confessed its correctness. General demurrers to the amended bill, filed by the College, the Foreign Mission Board, and Anderson-Tully Company were overruled by the trial court. From that action the College, the Foreign Mission Board and the Company took an interlocutory appeal. Because the issues are presented on general demurrers, we assume the accuracy of the facts alleged in the bill. In abbreviation form, they are as follows:

Dr. J. V. May, of Claiborne County, died testate on May 9, 1940. His wife and only child had predeceased him, and at the time of his death he left surviving him neither a wife nor children, nor children of any children. The complainants and named defendants are his heirs at law. His holographic will was probated on May 25, 1940. Part of the estate he owned at his death was a plantation formerly known as Magnolia Hill, consisting of approximately 465 acres in Claiborne County.

Item IV of the will provided: ''To Mississippi College, Clinton, Mississippi, I devise and bequeath my 465 acre farm in district two Claiborne County, Mississippi, at the proper time the same is to be converted into cash and held as a perpetual trust fund or endowment, and the proceeds therefrom shall annually go to the support of Christian Education in that institution, there shall be

four or more annual scholarships and no scholarship shall exceed one hundred dollars. ($100.00) in value, members of the Port Gibson Baptist Church and of the therein association who are qualified and desire to prepare themselves as Christian workers shall have first consideration, ministerial Students shall have next or second consideration, as a Memorial to Dr. and Mrs. J. V. May."

By Item VII he devised certain shares of stock to the Foreign Mission Board "as a perpetual endowment." Proceeds from these shares were directed to be used annually by the Board in support of mission work throughout the world.

Item X of the will, which appellants say is a general residuary clause, states: "After the above allications (sic) have been made and all of my debts are paid, my desire is that all of the rest of my holdings including cash and balance of annuity in N. Y. L. Ins. Co. be used to supplement Item VII above; increasing said fund by that amount and subject to same terms and for same purpose, when there are no ligitimate (sic) applicants for said scholarship (Item V) then Item X cont. the amount of that year's earnings shall be transferred to Item *IV* for the benefit of Ministerial Students according to the terms of Item IV."

Mississippi College, which is part of and under the control and supervision of the Mississippi Baptist State Convention and the Louisiana Baptist State Convention, and whose primary purpose is the teaching of religious education to its students, became vested with title to the lands conveyed to it in Item IV of the will. But the College's title was subject to the provisions of Sec. 270 of the Mississippi Constitution, adopted in 1940, and also subject to Miss. Code 1942, Sec. 671, enacted in 1940 before testator's death.

Dr. May was a medical doctor and also a lawyer. His will was holographic in form, wholly written and prepared by him. He was familiar with the proposed con-

stitutional amendment when he wrote his will on December 11, 1939, and in fact discussed with some of his heirs the effect of these proposed changes in the law. Although Mississippi College became vested with title to the lands under Item IV, the bill averred it was permitted by Constitution Sec. 270 to hold the same for a period of not longer than ten years. The ten years expired in May, 1950, but the College within that time did not sell or convey the land. Hence it was charged that, upon expiration of the ten years, the lands immediately reverted to complainants, heirs of Dr. May. In 1953 the College sold timber on the land to Anderson-Tully Company, and complainants asked for an accounting of the proceeds. An accounting was also asked for money received from an oil, gas and mineral lease and agricultural leases executed by the College on these lands.

Complainants prayed that the claims to the land by the College, the Foreign Mission Board and Anderson-Tully Company be cancelled as clouds on their title. In addition, the bill averred that, after institution of this suit, "said Foreign Mission Board of the Southern Baptist Convention held a meeting of its duly authorized officers to act in such premises, in the course of which meeting, (they) passed a resolution clarifying and setting out their position in said matter, and your complainants would show, on information and belief, that said Foreign Mission Board of the Southern Baptist Convention, by said resolution did firstly, acknowledge that it is not claiming to be the owner of any interest in said lands by virtue of and under the terms of said Will, and secondly, that in the event of any such interest might be declared to be vested in said Foreign Mission Board of the Southern Baptist Convention by the court, that then in said event, that this defendant, Foreign Mission Board of the Southern Baptist Convention, would only be holding in trust for the other defendant, the Mississippi College."

Prior to the adoption by the people in 1940 of an amendment to the State Constitution, now known as Sec. 270, the Constitution contained an extensive prohibition against the devise of land, or money to be obtained therefrom, by any will in favor of any religious or ecclesiastical corporation, or society or denomination, or to any person or body politic "in trust either express or implied, secret or resulting, either for the use or benefit of such" body, or "for the purpose of being given or appropriated to charitable uses or purposes." Such devises were null and void, and the heirs took the property as though no testamentary disposition had been made. Miss. Const. 1890, Sec. 269. Sec. 270 of the 1890 Constitution prohibited also any legacy or gift by will of money or personal property to such bodies, and made the same null and void. See George Ethridge, Miss. Constitutions (1928) pp. 461-464.

In 1938 the Legislature proposed amendments to Constitution Secs. 269 and 270. Miss. Laws 1938, Extra. Sess., Chs. 94, 95. The proposed amendments were approved by an overwhelming majority of the voters in November 1939, and on January 18, 1940 the amendments were put into effect. Miss. Laws 1940, Chs. 325, 326. Former Section 269 was repealed, and Sec. 270 of the Constitution was amended to read as follows:

"No person leaving a spouse or child, or descendants of child shall, by will, bequeath or devise more than one-third of his estate to any charitable, religious, educational or civil institutions, to the exclusion of such spouse or child, or descendants of child, and in all cases the will containing such bequest or devise must be executed at least ninety days before the death of the testator, or such bequest or devise shall be void.

"Provided, however, that any land devised, not in violation of this section, to any charitable, religious, educational, or civil institution may be legally owned, and further may be held by the devisee for a period of not

longer than ten years after such devise becomes effective, during which time such land and improvements thereon shall be taxed as any other land held by any other person, unless exempted by some specific statute.''

At the same session the Legislature enacted Ch. 318, Laws 1940, now Miss. Code 1942, Sec. 671, which authorizes the devisee to sell the lands within ten years, and, in default thereof, creates a reverter to or remainder in the heirs or other devisees under the will: ''No person leaving a spouse or child, or descendant of a child, shall, by will, bequeath or devise more than one-third of his estate to any charitable, religious, educational or civil institution, to the exclusion of such spouse or child, or descendant of such child; and in all cases the will containing such bequest or devise must be executed at least ninety days before the death of the testator, or such bequest or devise shall be void.

''Provided, however, that any land devised, in accordance with the terms of this section, to any charitable, religious, educational, or civil institution may be legally owned, and held by the devisee for a period not longer than ten years after such devise becomes effective, during which time such land and improvements thereon shall be taxed in the same manner and to the same extent as land held by any others is taxed, unless exempt by some specific statute.

''Provided further, that within said period of ten years during which such land may be held, the charitable, religious, educational or civil institution holding the same shall have the power and right to sell and convey the said lands so held, or any part thereof, and its deed of conveyance may be treated as passing such title thereto as was possessed by the testator, or the said land, or any part thereof, may be leased for a length of time not extending beyond the expiration of the period during which it may be legally held by the lessor institution. But if such land be not sold and disposed of within the said period of ten

years, then in that event at the expiration of the said period of ten years it shall revert to the heirs at law of the testator under whose will it was devised to the institution holding it, or to the devisees under such will as the case may be.''

There have been two cases interpreting amended Const. Sec. 270. Bell v. Miss. Orphans' Home, 192 Miss. 205, 5 So. 2d 214 (1941), held that the ninety-day clause in the first paragraph of Sec. 270 applies only where the testator dies leaving a spouse or child, or descendants of child. It was not applicable in that case. *Bell* did not involve, except indirectly, an interpretation of the second paragraph of Sec. 270, which is here in issue. But later reference will be made to the rationale of that part of the decision which pertained to the second paragraph.

In Miss. School for the Blind v. Armstrong, 216 Miss. 348, 62 So. 2d 369 (1953), the testatrix left surviving her a son. After providing for stated bequests, she bequeathed and devised certain personal and real property ''to the Mississippi School for the Blind . . . to be used by that institution for the education and benefit of the blind children in attendance at that school.'' The will, executed more than ninety days before testatrix's death, came within the other part of the first paragraph of Sec. 270. It prevented the School from taking more than one-third of the estate to the exclusion of the son. It was held that the School could take, pro tanto, one-third of the estate, this clause of the will being valid to that extent; and that the balance went to the son. The gift was not void in toto.

*First.* The second paragraphs of Constitution Sec. 270 and Code Sec. 671 prevent Mississippi College from owning and holding the lands devised to it by Dr. May for more than ten years. We think this is their clear intent and purpose. The first paragraph of Sec. 270 is almost a literal transcription of a Georgia statute, as noted in *Bell.* Ga. Code Ann. (1937), Sec. 113-107.

The draftsmen of Sec. 270 added to the terms of the Georgia statute the second paragraph, which constitutes a conjunctive and additional provision. Under its terms, "any land devised, not in violation of this section," to the named institutions can be legally owner and held by the devisee for not longer than ten years. Stated differently, if the devise is not in violation of the first paragraph, the land devised can be held by the devisee only for ten years. An estate for ten years is created in the devisee.

■■ ■ We cannot agree with appellants' argument that the second paragraph applies only where the testator leaves a spouse or child or descendants of child. It is contrary to the terminology and the manifest purpose of the second paragraph of Sec. 270. The latter applies where "any land" is devised not in violation of the first paragraph of the section.

*Bell* was concerned with application of the first paragraph of Sec. 270. But the executor argued that the ninety-day clause applied to any person making a bequest or devise, irrespective of the existence of a spouse or child, because otherwise the limitations of the second paragraph would only apply where the testator has left a spouse or child. The Court said, "It is our opinion, however, that this position is untenable." In other words the second paragraph applies in all cases. The first paragraph pertains to testator's leaving a spouse or child, or descendants of child. This response to appellant's argument in *Bell* was an essential part of the Court's reasoning in that case.

The opinion in *Bell* then said that the second paragraph of Sec. 270 was inserted to apply *"without regard to* whether or not the testator or testatrix left surviving him or her a spouse or child, or descendant of a child." (Emphasis added.) Although this statement in *Bell* is not the ratio decidendi of that case, it is an essential part of the basis of that decision. And it clearly reflects the

interpretation of the second paragraph by the Court en banc near the time of the adoption of Sec. 270.

*Second.* Appellants argue that Item IV of Dr. May's will designates Mississippi College as a mere trustee to hold the land and proceeds from it for the scholarships to students within the designated categories. Hence it is asserted that the devise is not within Sec. 270, which refers only to a devise of land directly to the described institutions, and that the conveyance to the College as trustee for the benefit of others is not such a prohibited direct conveyance of title to the College. It holds only a legal title for benefit of others.

■■ Item IV describes the fund under two separate names, "a trust fund or endowment." The scholarships can be given an used only at Mississippi College, "for the support of Christian education in that institution." The gift is for the very purposes for which the College was organized, or for some of its immediate and direct purposes. We do not think that a bequest or devise to an eleemosynary corporation in trust for the very purposes for which it is organized prevents operation of the provisions of Sec. 270. Hastings v. Rathbone, 194 Iowa 177, 188 N. W. 960, 23 A. L. R. 392, (1922); 76 C. J. S., Religious Societies, Sec. 51(c); 11 C. J., Charities, Sec. 68, page 351; 14 C. J. S., Charities, Sec. 45, page 498.

In 1880 the charter of Mississippi College was amended by Chapter 111, Miss. Laws 1880. Section 9 thereof provided that "the endowment fund", now and later owned by the College, "shall be and shall constitute a *trust fund,* in the hands and under the entire control of the president and board of trustees. . ." (Emphasis added) This statutory charter provision is significant in that it considers, as does the instant will, that the endowment fund and trust fund of the College are the same, under the control of the College.

■■ One purpose of Constitution Sec. 270 was to prevent the undue accumulation of excessive quantities

of land in the hands of prohibited types of institutions. Since this objective could not be accomplished by the creation of a trust with the institution being the trustee and beneficiary, as the College is here, the purpose of Sec. 270 could and would be effectively nullified. Moreover, as stated in Miss. Children's Home Society v. City of Jackson, 93 So. 2d 483, 486 (Miss. 1957), "Most of the principles applicable to charitable trusts are applicable to charitable corporations."

Former Sec. 269, repealed in 1940, was expressly applicable to every devise or bequest of lands to religious corporations or any person or body politic, "in trust, either express or implied, secret or resulting." The second paragraph of the present Constitution Sec. 270 does not expressly so state, but we hold that its terms are necessarily applicable to a trust of the present type which is created to promote the very purposes for which the trustee is organized.

In a converse situation, the reasoning in Old Ladies' Home Association v. Grubbs' Estate, 191 Miss. 250, 199 So. 287 (1941) is pertinent. Former Sec. 269 applied to devises of land in trust, either express or implied, secret or resulting. It did not refer specifically to direct devises to the institution. The devise was of a house and lot to the Old Ladies' Home. Old Sec. 269 was then in effect. It was contended that it applied only where the devise was in trust, and not to direct gifts. Rejecting this argument, it was held that testator's intention was the land should be for the benefit of the inmates of the Home, the Home took the land in trust under an implied obligation to use it for its inmates, and the devise was invalid. See also Miss. Children's Home Society v. City of Jackson, supra.

In *Grubbs' Estate* the court rejected the argument that a direct gift was outside former Sec. 269. In the instant case, we reject for similar reasons the contention that a trust, directed to the purposes for which the trustee was

created, takes the devise out of present Constitution Sec. 270.

The foregoing approach to the issue is universally applied where a secret or implied trust arises, and an effort is made to avoid the mortmain act.. 3 Bogert, Trusts and Trustees (1946), Sec. 499 states: ". . . if the heirs or next of kin of the donor sue to have a resulting trust for them declared on the ground that the trust for the charity, whether called express or implied, was void because it sought to evade the statute, they will be successful in England, and it would seem should be in this country." Since the courts consider the effect of the devise, where a secret or implied trust arises, a fortiori we should adopt the same approach where a trust is expressly created, as here, for some of the purposes for which the trustee is organized. To the same effect is 4 Scott, Trusts (2d Ed., 1956), Sec. 362.5.

Appellants rely principally on a statement in Zollman, American Church Law (1933), Sec. 171 that mortmain provisions are "inapplicable to property held in trust by church corporation." A careful reading of the cases cited by that text reveals that they deal with mortmain provisions entirely different from the Mississippi Constitution and statutes.

In brief, although Item IV has terms indicating a trust in the College for the benefit of students at the College obtaining scholarships, the creation of a trust in land to an institution within the prohibition of the Constitution Sec. 270, where the proceeds are to be used for some of the purposes for which the institution was created, does not take the devise out of Sec. 270. The manifest purpose of the Constitution is to the contrary. The principles set forth in *Bell, Grubbs' Estate, Mississippi Children's Home Society,* and the mortmain cases in the general field of charitable trusts demonstrates this. Otherwise the objective of Sec. 270 could very easily be nullified.

Mississippi College took title to the lands as devisee of Dr. May, subject to the limitation that it could own and hold the land for a period of not longer than ten years. That period expired in May, 1950. Code Sec. 671 authorized the College at any time during the ten-year period to sell and convey the lands to someone else, and to utilize the proceeds. It further states that, if the land is not sold within that time, "it shall revert to the heirs at law of the testator under whose will it was devised to the institution holding it, or to the devisees under such will as the case may be." Since the College did not comply with the plain requirements of Constitution Sec. 270 and Code Sec. 671, and undertook to continue holding the lands contrary to the prohibitions of those two enactments, the reverter clause automatically took effect at the end of the ten-year period. The title of the College to the lands devised to it by Item IV of the will has terminated.

*Third.* The next issue is the effect of the reverter clause in the third paragraph of Code Sec. 671: "But if such land be not sold and disposed of within the said period of ten years, then in that event at the expiration of the said period of ten years it shall revert to the heirs at law of the testator under whose will it was devised to the institution holding it, or to the devisees under such will as the case may be."

██ ■ Appellants assert that this sentence has reference only to devises made by a testator leaving a spouse or child or descendants of child. We do not think the slight differences in terminology between the first two paragraphs of Code Sec. 671 and of Constitution Sec. 270 warrant any such distinction. Moreover, the reverter clause by its plain terms applies where land has not been sold within the ten-year period.

██ ■ Appellants advance this argument: Sec. 671, creating a reverter in the heirs of testator, violates Constitution Sec. 95, which prohibits donation of "lands be-

longing to, or under the control of state." Under Constitution Sec. 270, which does not expressly provide for a reverter, the state has a right by suit to assert a forfeiture of title by the College. Hence the property is under control of the state, and the effect of the reverter provision of Sec. 671 is to donate property under control of the state.

This position proceeds upon a fundamental misunderstanding of the estate created in the institutional devisee, here Mississippi College. The Constitution and the statute, read together, create in the College an estate for ten years, with a power of disposition in the College. The heirs or devisees of the estator have a vested remainder, subject to defeasance by the College exercising its power of disposition. 19 Am. Jur., Estates, Secs. 57, 58; 33 Am. Jur., Life Estates, Remainders and Reversions, Secs. 26, 66, 67. The state has no control over the lands within the terms of Constitution Sec. 95. Code Sec. 671, which went into effect before Dr. May died, operates as a limitation upon the testamentary power of the testator. It supplements and more fully carries out the purposes of the Constitution. National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649 (1933) ; Blackbourn v. Tucker, 72 Miss. 735, 17 So. 737 (1895) ; 94 C. J. S., Wills, Sec. 110.

The remaining question is whether the remainder estate vests in the heirs of testator, or in the alleged residuary devisee under his bill. The Foreign Mission Board claims that it is the residuary devisee under Item X of the will; and that it is now vested with fee title, the estate for years in the College having terminated without exercise of the College's power of disposition. Item X states: "After the above allications (sic) have been made my desire is that all of the rest of my holdings . . . be used to supplement Item VII above." Item VII bequeaths to the Foreign Mission Board certain shares of stock to be used in support of mission work throughout the world. We do not agree with appellants' assertions that Item X is a general residuary clause. By its own

terms it is particular and restricted in nature. It excludes allocations which have precedently been made in the will. Dr. May in Item IV had devised to the College the land. He manifestly did not intend that this land should go to any devisee other than the College. Item X then states that after the above allocations have been made, he desired that "all of the rest of my holdings" would supplement Item VII. 3 Page on Wills (3d Ed. 1941) summarizes the accepted rule: "A particular residuary clause does not pass any property except of the kind which is specified in the will." See also ibid., Secs. 989, 991; 96 C. J. S., Wills, Sec. 797. Hence Item X is a particular or limited residuary clause, applicable to testator's holdings other than the, allocations previously made, that is, the lands devised in Item IV. Item X does not carry the lands here in issue.

Moreover, assuming *arguendo* that Item X might be a general residuary clause, we do not think that the Foreign Mission Board can take title to the lands after the estate for years in the College has terminated.

The Board is in three of the four prohibited classifications, charitable, religious and educational institutions, which can own and hold land "for a period of not longer than ten years after such devise becomes effective." The devise to the Board as well as to the College became effective upon the death of Dr. May. Since the devisees of the estate for years and the remainder are in the prohibited categories, we think the intent and effect of Constitution Sec. 270 is to make the ten-year period applicable to the College coextensive in time with that pertinent to the remainder estate, owned by the Board.

 The purpose and terms of the Constitution and statute preclude the tacking of one ten-year period of ownership by a religious, charitable, educational or civil institution, onto the holding by another such institution for ten more years. The constitutional section provides that the land under "such devise," in the singular, may

be owned and held by "the devisee", in the singular, for not more than ten years. It does not contemplate more than one successive devisee in the institutional category. Code Sec. 671 states that, if not sold within ten years, "it shall revert" to the heirs or to the devisees; that is, the remainder estate vests in the heirs or a proper devisee. Under the interpretation urged by appellants the purpose of Constitution Sec. 270 and of the statute could be wholly and easily defeated, by tacking onto the ten-year estate held by a proscribed institution, another ten-year estate by another of such institutions, and then another ten-year estate, ad infinitum. In this respect it is interesting to note that the bill charges and the demurrers admit that the Foreign Mission Board has agreed to hold the land in trust for the College. However, this latter observation is not a basis of our decision, since we conclude that the Constitution and statute prohibit any successive ownership and holding by classified institutions, directly or indirectly, beyond the ten-year period.

In summary, the ten-year estate devised to Mississippi College has terminated, without the College during that period exercising its power of disposition. Item X is a particular residuary clause, and does not convey the land previously allotted to the College. And even if it is assumed that the Foreign Mission Board is a residuary devisee under the will, it is also a devisee within the restricted categories of the Constitution, which, by its terms and manifest intent, does not permit more than one successive devisee in the institutional classification. Also, the ten-year period controlling the estate of the College is coextensive with that of the Foreign Mission Board. Since there is no residuary devisee under the will who can take, the heirs at law of Dr. May take the remainder estate in the land under the so-called reverter clause.

The Constitution and statutes hold the highest claim on the power of this Court. Their demands transcend

any ideas which we might hold individually as to what is wise or unwise. We decide this case on the basis of what seems to us to be the plain intention of the statute and the manifest purpose of the Constitution.

Affirmed and remanded.

*Hall, Kyle, Holmes, Arrington* and *Gillespie, JJ.*, concur.

ROBERDS, P. J., Dissenting:

I cannot agree that either Section 270 of the Mississippi Constitution or Section 671 of the 1942 Mississippi Code has any application to this situation. It is admitted that Dr. May had the right and power to create a charitable trust for the benefit of scholarship students. But it is said the College is the real beneficiary, and that under said two sections the College had to divest itself of title within ten years. This will vested in the College only the powers of a trustee. The beneficiaries are students who qualify for scholarships. The will expressly states that "at the proper time" the land is to be "converted into cash and held as a perpetual trust fund or endowment" for those qualifying for scholarships. There are to be not less than four scholarships, each to receive not over $100 from the fund. The effect of this is just as if the scholarship students should walk up to the registrar with the money in their pockets and deliver it over as any other entrant to the College. The only possible benefit to the College would be that of having in its student body a few more scholarship students than it would have had if there had been no will. This would be a purely incidental benefit to the College if indeed any benefit at all. It is common knowledge that the colleges of Mississippi at this time are having great difficulty in supplying room for students in the crowded condition of the colleges. But this will did not give a dime to The Mississippi College. The provisions are all for a class of in-

dividuals. The time may come when there will be no member of this class qualified to receive the bounty, but as long as members of the benefited class exist the fund should be paid to them for scholarship purposes. If the time should come when there are no qualified beneficiaries, then an equity court must say what is to be done. But as long as the trust is active, then the duty and power of the trustee is to administer the trust as created by the will without profit to itself, except the incidential benefit, if any, which may come from having four or more additional students in the College.

The mortmain statutes do not prohibit a religious, educational or charitable corporation from holding title to land as trustee for others.

In American Church Law, Zollmann, Section 171, page 166, the rule is stated in this language: ''This limitation, however, refers only to land held permanently for their own use. Where church corporations hold land in trust for others, such land is not their own but belongs to the beneficiary. They have only the legal title, which is rather a burden than a benefit. There can be no reason why they should not be allowed to assume this burden. Therefore, a devise to a church of land in excess of its power to acquire 'to be applied to foreign missions' is perfectly good and valid.''

In 76 C. J. S., p. 815, Section 51(c), dealing with restrictions imposed by statutes limiting the amount of land a religious organization may acquire or hold, it is said: ''They apply to property acquired or held by a society for its own use, although the property was sold by the church after its acquisition, but not to property held by it in trust for charitable uses...''

In Kinney v. Kinney's Executor, 86 Ky. 610, 6 S. W. 593, 594, the testator owned one hundred acres of land. He died and left a will which provided: ''I do will and bequeath to the Methodist Episcopal Church, South, to be applied to foreign missions, all of my property, real

and personal, after the payment of my just debts, . . . for their use and benefit exclusively.'' The statute prohibited a church from taking or holding title to more than fifty acres of land. Testator was never married and his collateral kin brought suit, claiming that the devise of the land had lapsed under that statute—the same situation we have in the case at bar. The Kentucky Court disposed of the contention in these words:

''It is evident that the purpose of the statute was to prevent the accumulation in the hands of the churches of large landed estates. It was dictated by the same idea as to public policy which prompted the English mortmain act of 9th George II. Such a result would not only tend to cripple the progress and industry of the country without furthering the cause of Christianity, but would furnish a means and be likely to create a disposition upon the part of the church to meddle and interfere in matters of State.

''Looking then to the purpose of the statutory restriction, it is evident that the devise now in question is not embraced by it, either in spirit or letter. It merely gives the property to the church in trust, to be applied by it to a charitable purpose. The restriction in the statute above cited was intended to prevent a church from taking or holding for *its own use* more than fifty acres of land.''

Dr. May's will does no violence to either of the reasons prompting enactment of the mortmain statutes. One reason was the fear of excessive accumulation of lands by church and charitable organizations. Under Dr. May's will, The Mississippi College does not own the land. It is the trustee for administering the land and the proceeds thereof in case of a sale. It cannot acquire title except as others might do so in case of failure of the trust. Nor does the will deprive those who, in the true spirit, are entitled as heirs to his bounty—the other reason underlying mortmain statutes. Dr. May, when he executed this will, had neither wife, child nor descendant of

child. He devised his home in Port Gibson to three sisters and a nephew of his deceased wife; made provisions, small in money value, to some other collateral relatives. The wording of the will and the nature of the gifts indicate that none of the beneficiaries named under the will were in any manner dependent upon Dr. May's bounty. Apparently from the will he felt his duty was to admonish rather than enrich those named by him in the will. He suggested that they be "true Christian citizens", and he added: "My desire is that each one of you shall be a good servant of God and your fellowman. The real life is the life of service to God and man." He certainly felt under no obligation to those who have brought this suit. It appears that the bill to contest this will was filed by some thirty-two named complainants, and, in addition, an uncertain number of unknown heirs of those named. It is not possible to state exactly how many have come forward from various and sundry places throughout the United States to claim an interest in the property of Dr. May. It would be a justifiable conclusion to say, from the pleadings and circumstances disclosed in this record, that Dr. May did not know many of those who are contesting his will and claiming his property. Distant relatives, yes; the right to claim Dr. May's property and thwart his wishes, no, unless it is clear that they have the right to do so. I don't think that they have that right under the circumstances of this case.

The learned majority opinion invokes support from the fact that Dr. May was a lawyer. The deduction is that he knew, or should have known, whether he was making a legal disposition of his property. The fact that he was a lawyer bears against the conclusion in the controlling opinion. Whatever weight is to be given the fact that he was a lawyer seems to me to weight more heavily in favor of the legality than the invalidity of his act. Dr. May certainly thought he was making a lawful disposition of his land, else he would not have devised it as he

did. He thought, and he said in the will, he was creating "a memorial to Dr. and Mrs. May"—a living memorial, by the way, in the hearts of men, more enduring than monuments of granite or stone.

The philosophy of the mortmain statutes is stated in Kinney v. Kinney's Executor, supra. The prohibtion of Section 270 of the Constitution and Section 671, Code of 1942, Recompiled, is against a testator, who leaves a spouse or child, or descendant of a child, to the extent that he cannot bequeath more than one-third of his estate to the named institutions, to the exclusion of the named heirs-at-law. In other words, the law will not permit him to become generous to others before being just to his dependents.

Dr. May's devise was not made in accordance with, nor in violation of, the terms of the above-numbered sections. He had neither a spouse nor a child nor a descendant of a child. Consequently, there was no prohibtion against a devise of his property even if he had made it unconditional. But he did not make such a bequest. He wished to create a memorial for himself and wife. This desire, as he purposed, would be effectuated by the creation of limited scholarships at Mississippi College. He did not make an unconditional devise to the College for its benefit. The beneficiaries of his bounty were to be students. He merely created a trust and provided for its administration by the College. As further evidence of his taking the devise out from under the condemnation of the mortmain statutes, he expressly provided that the taxes should be paid on this property.

The case of Bell v. Mississippi Orphans Home, 192 Miss. 205, 5 So. 2d 214, is not authority for a contrary view because (1) the devise in the present case is simply to the College for the execution of a trust, and (2) since the question before the Court in that case was entirely different, the language, so far as it might be applicable here, is obiter dictum.

*McGehee, C. J.,* and *Lee, J.* join in this dissent.

HALL, J. Specially Concurring:

I concur in everything which is said in the original opinion. This is against my individual sympathy in the matter because I graduated from Mississippi College and have always regarded it very highly, but my feeling toward the institution cannot make me ignore what I conceive to be the settled law in this case.

Section 269 of the Mississippi Constitution originally read as follows: ''Every devise or bequest of lands, tenements, or hereditaments, or any interest therein, of freehold or less than freehold, either present or future, vested or contingent, or of any money directed to be raised by the sale thereof, contained in any last will and testament, or codicil, or other testamentary writing, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association of persons, or to any person or body politic, in trust, either express or implied, secret or resulting, either for the use and benefit of such religious corporation, society, denomination, or association, or for the purpose of being given or appropriated to charitable uses or purposes, shall be null and void, and the heir at law shall take the same property so devised or bequeathed, as though no testamentary disposition had been made.'' It is very clear that under this section prior to its amendment the will would be utterly null and void. It is a well-known fact that the religious leaders of the state desired to change the Constitution so as to permit a bequest of land and a wide campaign of propaganda was carried on with the result that Sec. 270 was adopted in lieu of the foregoing section and also in lieu of the old Sec. 270 of the Constitution. This was at the November, 1939 general election, but under our law the amendment which the people had voted did not become a part of the Constitution until the legis-

lature, by Chapters 325 and 326 of the Laws of 1940, adopted on January 18, 1940 by a concurrent resolution, inserted the new Sec. 270 in lieu of the old Secs. 269 and 270.

In order to induce the people to approve the proposed change the leaders specifically provided that land should not be held for a period of more than ten years after the devise becomes effective. As pointed out in the controlling opinion, Dr. May executed his will on December 11, 1939, after the people had voted in favor of the proposed amendment, and he was undoubtedly thoroughly familiar with the amendment.

The new Section 270 specifically limits the time to 10 years after the devise becomes effective. Dr. May knew this for he specifically provided in his will that the College, "at the proper time", is to convert the land into cash and then the cash,—not the land, is to be held as a perpetual trust fund or endowment, etc.

I am unwilling to give my assent to any subterfuge whereby the effect of Sec. 270 can be nullified, especially on the theory that the land is merely held in trust and may be held indefinitely. If we should ever accept such a theory, we would simply be repealing Sec. 270 in toto, which I am unwilling to do.