330 So.2d 882 (1976)
METHODIST HOSPITAL, a Tennessee General Welfare Corporation
v.
Ann SLACK et al.
No. 48515.
Supreme Court of Mississippi.
April 20, 1976.
Rehearing Denied May 11, 1976.
*883 Holcomb, Dunbar, Connell, Merkel & Tollison, Clarksdale, for appellant.
John S. Holmes, Yazoo City, for appellees.
Before GILLESPIE, C.J., and WALKER and BROOM, JJ.
WALKER, Justice, for the Court:
This is an appeal from the Chancery Court of Yazoo County, Mississippi, which overruled appellant's general demurrer to appellees' bill of complaint seeking to remove the Methodist Hospital's claim to Chicora Plantation as a cloud on their title.
The Methodist Hospital (appellant) is the primary beneficiary named in the will of Miss Mamie M. Thomas who died testate November 18, 1958.
The appellees (complainants below) are the heirs at law of Miss Thomas.
Involved is the interpretation to be placed on the constitutional and statutory mortmain provisions of our law.
Section 270 of the Mississippi Constitution provides:
No person leaving a spouse or child, or descendants of child shall, by will, bequeath or devise more than one-third of his estate to any charitable, religious, educational or civil institutions, to the exclusion of such spouse or child, or descendants of child, and in all cases the will containing such bequest or devise must be executed at least ninety days before the death of the testator, or such bequest or devise shall be void.

Provided, however, that any land devised, not in violation of this section, to any charitable, religious, educational, or civil institution may be legally owned, and further may be held by the devisee for a period of not longer than ten years after such devise becomes effective, during which time such land and improvements *884 thereon shall be taxed as any other land held by any other person, unless exempted by some specific statute. (Emphasis added).
Section 270 of the Constitution is codified verbatim in Mississippi Code Annotated section 91-5-31 (1972) with the addition of the following paragraph:

Provided further, that within said period of ten years during which such land may be held, the charitable, religious, educational, or civil institution holding the same shall have the power and right to sell and convey the said lands so held, or any part thereof; and its deed of conveyance may be treated as passing such title thereto as was possessed by the testator, or the said land, or any part thereof, may be leased for a length of time not extending beyond the expiration of the period during which it may be legally held by the lessor institution. If such land be not sold and disposed of within the said period of ten years, then in that event, at the expiration of the said period of ten years, it shall revert to the heirs at law of the testator under whose will it was devised to the institution holding it, or to the devisees under such will, as the case may be. (Emphasis added).
The specific question presented is: May the constitutional and statutory proscription against certain institutions holding for more than ten years land devised to them be avoided by devising the land in trust to a non-proscribed institution for the benefit of a proscribed institution? The answer is no.
Mortmain in Mississippi has an interesting history, first appearing in the Code of 1857. These sections were dropped from the Code of 1880 but were included as sections 269[1] and 270[2] of the Constitution of 1890. These two sections remained both as statutory and constitutional law until repealed in 1940 and replaced by what is now section 270 of the Constitution and section 91-5-31 of the Mississippi Code of 1972. The history of mortmain in Mississippi may be found in the editor's note under sections 269 and 270, repealed, of the Constitution of the State of Mississippi and the historical references found in cases construing the law. There are thirteen Mississippi cases dealing with the subject, Blackbourn v. Tucker, 72 Miss. 735, 17 So. 737 (1895); Hailey v. McLaurin's Estate, 112 Miss. 705, 73 So. 727 (1916); Maas v. Sisters of Mercy of Vicksburg, 135 Miss. 505, 99 So. 468 (1924); Greely v. Houston, 148 Miss. 799, 114 So. 740 (1927); Anderson *885 v. Gift, 156 Miss. 736, 126 So. 656 (1930); National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649 (1933); Wright v. Mary Galloway Home for Aged Women, 186 Miss. 197, 187 So. 752 (1939); Old Ladies' Home Assn. v. Grubbs' Estate, 191 Miss. 250, 199 So. 287 (1940); Coleman v. Whipple, 191 Miss. 287, 2 So.2d 566 (1941) construing the old law; and, Bell v. Mississippi Orphans Home, 192 Miss. 205, 5 So.2d 214 (1941); Mississippi School for the Blind v. Armstrong, 216 Miss. 348, 62 So.2d 369 (1953); Mississippi College v. May, 235 Miss. 200, 108 So.2d 703 (1959), and Crosby v. Alton Ochsner Medical Foundation, 276 So.2d 661 (Miss. 1973) construing the new law.
Early mortmain statutes had as their purpose the prevention of various evils and abuses, actual or imagined, connected with devises and bequests to charities and churches. Since such corporate bodies have perpetual existence, forfeiture and escheats were lost to the crown, taxes were lost and many feudal dues were avoided. An excellent discussion of the early purposes of mortmain (deadhand) statutes is found in Coleman v. Whipple, supra. In this country and more recently, one of the purposes of mortmain is to prevent one who would not be charitable at his own expense to be so at the expense of his heirs, Blackbourn v. Tucker, supra, another is to prevent the accumulation of excessive quantities of land in such institutions, Mississippi College v. May, supra, and another is to protect a testator's heirs from improper influences when he is in extremis, Bell v. Mississippi Orphans' Home, supra.
In 1940, when the old sections, 269 and 270 of the Constitution of 1890 and sections 3564[3] and 3565[4] of the Mississippi Code of 1930 were repealed and replaced by the present section 270 of the Mississippi Constitution and section 91-5-31 of the Code of 1972, the Legislature was, in this writer's opinion, attempting to establish a neutral ground which would prevent the so-called evils that the original mortmain laws were designed to eliminate, yet at the same time allow a testator an opportunity to aid and promote religious, educational, charitable and civil institutions by devises and bequests within certain limitations and conditions.
The present mortmain provisions of our constitution and statute contain three limitations:
(1) No more than one-third of an estate (land and personal) can be left to these institutions if the testator leaves a spouse or descendant;
(2) The will must be executed at least ninety days prior to the death of the testator if a devise or bequest to such an institution is contained therein and the testator had a spouse or descendants; and
*886 (3) Land devised to such institutions may not be held for more than ten years.
We are not here concerned with the first two provisions, the testatrix having violated neither.

THE FACTS
Miss Mamie M. Thomas died testate in Memphis, Tennessee, on or about November 18, 1958, leaving an estate after specific bequests valued (in 1963) at $2,000,000 including a 167/216 undivided interest in Chicora Plantation in Yazoo County, Mississippi. Her interest amounted to approximately 500 acres.
After itemizing numerous specific bequests, Miss Thomas, in Item XXII[5] of the will left her 167/216 interest in Chicora Plantation to the Union Planters National Bank of Memphis, Tennessee, as trustee. The trust was for a period of fifteen years and the trustee was directed to rent out Miss Thomas' interest in the Plantation, pay taxes and other expenses and further provided that any net revenue was to become part of the residue of her estate and pass under the terms of the will with reference to the residue. At the end of the fifteen-year trust period, Miss Thomas' interest in Chicora Plantation was to "become part of the residue of my estate and pass under the provisions of this will." (The same paragraph of the will provided for an early termination of the trust in the event that oil was discovered; however, it is undisputed that oil was not discovered on the property).
The trust contained no power in the trustee to sell testatrix's interest in Chicora.
Item XXIII[6] of Miss Thomas' will then provided:
As a memorial to my beloved brother, William Green Thomas, but subject to the conditions and limitations hereinafter *887 set forth, I offer to make over to the Methodist Hospital of Memphis, Shelby County, Tennessee ... all the rest, residue and remainder of my estate, real, personal and mixed, wherever located... . The conditions and limitations on which this offer is made are as follows:
(1) The Methodist Hospital shall have ten (10) years from the date of my death within which to decide whether it will accept my offer ... it is not required to wait the full ten years, but may accept my offer at any time it desires within the ten year period after my death...
(2) In the event the Methodist Hospital accepts my offer, then it shall notify my Executors in writing of this fact and in such writing it shall acknowledge receipt of my estate and agree to faithfully carry out all the terms and provisions herein imposed upon it by this will, and as of the date of such acceptance my estate is to be valued and the Hospital shall contribute an amount equal to the value of my estate.
......
(3) The entire residue of my estate and the amount to be contributed by the Methodist Hospital as indicated in the preceding paragraph shall be used by the Methodist Hospital in the erection and equipping of a hospital building to be devoted to the care of the sick and to the relief of pain and suffering of humanity [and to be named after Miss Thomas' brother, William Green Thomas].
Item XXIV[7] then provided for an alternate devise if the hospital refused to accept her offer.
*888 The Methodist Hospital accepted the offer upon the terms contained in the will on or about September 19, 1963.
On January 25, 1974, after the expiration of the fifteen-year trust period, Union Planters National Bank of Memphis conveyed the 167/216 undivided interest in Chicora Plantation to the Methodist Hospital.
Pertinent dates are: (1) Mamie M. Thomas died on November 18, 1958; (2) The trust, according to the terms of the will was to exist for a period of fifteen years from Miss Thomas' death which made the expiration date November 18, 1973; (3) The Methodist Hospital accepted the offer contained in the will on or about September 19, 1963, by matching with $2,000,000, the then value of the estate; and (4) The trustee conveyed title to testatrix's interest in Chicora Plantation to the Methodist Hospital on January 25, 1974, and the hospital continues to hold title.
The appellant argues: (a) that mortmain laws are not applicable here asserting that by the terms of the will the title to testatrix's interest in Chicora did not vest and could not vest in the Methodist Hospital until fifteen years from the date of the testatrix's death or until petroleum was discovered on the land devised; that it merely had a beneficial interest in the land after its acceptance of the offer in 1963; that it had no legal title to, possession of, or right of disposition of the property until November 18, 1973, when the trust terminated, and that the devise did not become effective within the meaning of the Constitution and the statute until such date; (b) that a devise in trust to a non-proscribed institution for the benefit of a proscribed institution is not within the prohibitions of the Constitution or the statute; and that (c) The Methodist Hospital would be more aptly described as a purchaser than a devisee.
As stated earlier, the specific question presented is: May the constitutional and statutory proscription against certain institutions holding for more than ten years land devised to them be avoided by devising the land in trust to a non-proscribed institution for the benefit of a proscribed institution?
An analogous situation is found in Mississippi College v. May, 235 Miss. 200, 108 So.2d 703 (1959). There the heirs at law of Dr. J.V. May filed a bill of complaint against Mississippi College and others to remove Mississippi College's claim to certain property as a cloud on their title. In that case, Item IV of Dr. May's will provided:
"To Mississippi College, Clinton Mississippi, I devise and bequeath my 465 acre farm in district two Claiborne County, Mississippi, at the proper time the same is to be converted into cash and held as a perpetual trust fund or endowment, and the proceeds therefrom shall annually go to the support of Christian Education in that institution, ..." (235 Miss. at 209, 108 So.2d at 706).
Dr. May died in 1940, and ten years expired in 1950, but Mississippi College within that time did not sell or convey the land. Hence it was charged that, upon expiration of the ten years, the lands immediately reverted to the complainants, the heirs of Dr. May.
The college argued that Dr. May's will designated Mississippi College as a mere trustee to hold the land and proceeds from it for scholarships to students within designated categories; that the devise was not within Section 270 arguing that the section refers only to a devise of land directly to certain institutions; and, that the conveyance to the college as trustee for the benefit of others was not such a prohibited direct conveyance of title to the college, and that it held only a legal title for the benefit *889 of others. In answer to their contention, the Court said:
We do not think that a bequest or devise to an eleemosynary corporation in trust for the very purposes for which it is organized prevents operation of the provisions of Sec. 270. Hastings v. Rathbone, 1922, 194 Iowa 177, 188 N.W. 960, 23 A.L.R. 392; 76 C.J.S. Religious Societies § 51c; 11 C.J., Charities, Sec. 68, page 351; 14 C.J.S. Charities § 45, page 498.
......
One purpose of Constitution Sec. 270 was to prevent the undue accumulation of excessive quantities of land in the hands of prohibited types of institutions. Since this objective could not be accomplished by the creation of a trust with the institution being the trustee and beneficiary, as the College is here, the purpose of Sec. 270 could and would be effectively nullified... .
Former Sec. 269, repealed in 1940, was expressly applicable to every devise or bequest of lands to religious corporations or any person or body politic, `in trust, either express or implied, secret or resulting.' The second paragraph of the present Constitution Sec. 270 does not expressly so state, but we hold that its terms are necessarily applicable to a trust of the present type which is created to promote the very purposes for which the trustee is organized. (235 Miss. 216-217, 108 So.2d at 709).
In a specially concurring opinion in Mississippi College v. May, supra, Justice Hall, speaking out strongly against using a trust to circumvent the effect of Section 270 of the Constitution said: "I am unwilling to give my assent to any subterfuge whereby the effect of Sec. 270 can be nullified, especially on the theory that the land is merely held in trust and may be held indefinitely. If we should ever accept such a theory, we would simply be repealing Sec. 270 in toto, which I am unwilling to do." (235 Miss. at 229, 108 So.2d at 715.)
In deciding the case now before the Court, it must be kept in mind that under the terms of Miss Thomas' will when the Hospital accepted the bequest to it in 1963 by matching the value of the entire estate with $2,000,000, the Hospital immediately became entitled to all of the assets of the estate with the exception of Miss Thomas' interest in Chicora Plantation which was devised in trust to the Union Planters National Bank. However, it is pertinent to note that once the Hospital accepted the bequest in 1963, it became entitled, by virtue of the residuary clause of the will, to any profits resulting from the trustee's management of Chicora Plantation; and, by the terms of the will, at the end of the fifteen-year trust period, Miss Thomas' interest in Chicora would pass to the Hospital. After accepting the conditions of the will, the Hospital was the sole beneficiary of the trust and was also to be the recipient of the corpus of the trust at the expiration of fifteen years. The trustee had no power to sell Chicora. It is therefore evident that the trustee's role was for the sole purpose of delaying the Methodist Hospital from taking title to Chicora, yet allowing it to receive the profits therefrom, in an apparent attempt to prevent the running of the ten-year period of limitation during which a proscribed institution may legally own real property as provided for in Section 270 of the Constitution.
This Court has held that one purpose of Section 270 of the Constitution is to prevent the undue accumulation of lands in certain classes of institutions. Mississippi College v. May, supra. That purpose cannot be defeated by devising lands in trust to a non-proscribed institution to be held in excess of ten years for the sole benefit of one or more proscribed institutions. For us to hold otherwise would nullify what the Court has declared to be one of the fundamental purposes of Section 270 of the Constitution.
We do not speculate as to whether the Hospital could have successfully invoked *890 the aid of a court of equity to have the trust terminated under the theory of equitable approximation since no such effort was made in that respect by the appellant Hospital.
Without deciding the question, it appears that once the Hospital accepted the terms of the will, that it had a beneficial interest in Chicora which it could have disposed of within ten years of Miss Thomas' death and thereby prevented a reverter of the property to Miss Thomas' heirs.
The appellant Hospital's contention that it would be more aptly described as a purchaser than a devisee is unsupported by authority, and we deem it to be without merit.
We are of the opinion that the lower court correctly overruled the appellant's demurrer to appellee's bill of complaint, and this cause is therefore affirmed.
This case was considered by a conference of the Justices en banc.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.
LEE, J., took no part as this case was considered before his appointment.
NOTES
[1] [Text of the Repealed section 269 of the Constitution of 1890].

Section 269. Every devise or bequest of lands, tenements, or hereditaments, or any interest therein, of freehold or less than freehold, either present or future, vested or contingent, or of any money directed to be raised by the sale thereof, contained in any last will and testament, or codicil, or other testamentary writing, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association of persons, or to any person or body politic, in trust, either express or implied, secret or resulting, either for the use and benefit of such religious corporation, society, denomination, or association, or for the purpose of being given or appropriated to charitable uses or purposes, shall be null and void, and the heir at law shall take the same property so devised or bequeathed, as though no testamentary disposition had been made.
[2] [Text of the Repealed section 270 of the Constitution of 1890].

Section 270. Every legacy, gift, or bequest of money or personal property, or of any interest, benefit, or use therein, either direct, implied, or otherwise, contained in any last will and testament or codicil, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association, either for its own use or benefit or for the purpose of being given or appropriated to charitable uses, shall be null and void, and the distributees shall take the same as though no such testamentary disposition had been made.
[3] (Repealed). Statutes of mortmain.  Every devise or bequest of lands, tenements, or hereditaments, or any interest therein, or freehold or less than freehold, either present or future, vested or contingent, or of any money directed to be raised by the sale thereof, contained in any last will and testament, or codicil, or other testamentary writing, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association of persons, or to any person or body politic, in trust, either express or implied, secret or resulting, either for the use and benefit of such religious corporation, society, denomination, or association, or for the purpose of being given or appropriated to charitable uses or purposes, shall be null and void, and the heir at law shall take the property so devised or bequeathed, as though no testamentary disposition had been made.
[4] (Repealed). Statutes of mortmain  bequests.  Every legacy, gift, or bequest, of money or personal property, or of any interest, benefit, or use therein, either direct, implied, or otherwise, contained in any last will and testament, or codicil, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association, either for its own use or benefit, or for the purpose of being given or appropriated to charitable uses, shall be null and void, and the distributees shall take the property as though no such testamentary disposition had been made.
[5] XXII OF THE WILL. To the Union Planters National Bank of Memphis, Tennessee as Trustee I make over my 167/216ths interest in Chicora Plantation located about nine miles from Pickens, Mississippi in Yazoo and Holmes Counties of that State. Oil companies from time to time have secured rights to bore wells for the purpose of determining whether there is petroleum on the property, and in the event petroleum is found, the property will become very valuable. I direct the Trustee to rent out my interest in the plantation, pay taxes and other expenses and any net revenue is to become part of the residue of my estate and pass under the terms of this will with reference to the residue. I direct the Trustee from time to time to grant the privilege to responsible oil companies to bore wells on the land for the purpose of determining whether there is petroleum beneath. This trust shall continue for the period of fifteen (15) years from the date of my death at which time the trust shall cease and my interest in this farm shall become part of the residue of my estate and pass under the provisions of this will. In the event petroleum is found upon the property during the said period of fifteen (15) years, then at the date of the finding of the petroleum, this trust shall cease and the property shall pass under the provisions relative to the residue of my estate under this will.
[6] XXIII OF THE WILL. As a memorial to by [sic] beloved brother, William Green Thomas, but subject to the conditions and limitations hereinafter set forth, I offer to make over to the Methodist Hospital of Memphis, Shelby County, Tennessee, located on the south side of Union Avenue between South Bellevue Street on the west and South Claybrook Street on the east, all the rest, residue and remainder of my estate, real, personal and mixed, wherever located, including my annuity policies in the Penn Mutual Life Insurance Company and the Prudential Life Insurance Company and including any policies which hereafter may be taken out by me in which an interest to me is reserved. The conditions and limitations on which this offer is made are as follows:
(1) The Methodist Hospital shall have ten (10) years from the date of my death within which to decide whether it will accept my offer and until such acceptance the Executors of my will hereinafter named shall keep my estate intact and invest and reinvest the funds for the purpose of receiving income which they shall accumulate. While the Methodist Hospital is given the period of ten (10) years within which to decide whether it will accept my offer, it is not required to wait the full ten years, but may accept my offer at any time it desires within the ten year period after my death.
.....
(2) In the event the Methodist Hospital accepts my offer, then it shall notify my Executors in writing of this fact and in such writing it shall acknowledge receipt of my estate and agree to faithfully carry out all the terms and provisions herein imposed upon it by this will, and as of the date of such acceptance my estate is to be valued and the Hospital shall contribute an amount equal to the value of my estate.
(3) The entire residue of my estate and the amount to be contributed by the Methodist Hospital as indicated in the preceding paragraph shall be used by the Methodist Hospital in the erection and equipping of a hospital building to be devoted to the care of the sick and to the relief of pain and suffering of humanity. This building shall be called The William Green Thomas Hospital and on the outside thereof above the main entrance there shall be installed in large letters cut in stone reading "THE WILLIAM GREENE THOMAS HOSPITAL Erected in Loving Memory by his Sisters" and the date of erection... .
.....
[7] XXIV OF THE WILL. In the event the Methodist Hospital does not accept my offer as above pointed out, then my executors shall cause to be created a charitable corporation to be organized under the laws of the State of Tennessee and to be known as THE WILLIAM GREENE THOMAS FOUNDATION with its situs in the City of Memphis, Tennessee, and after the corporation has been duly organized and proper officers elected, the Executors of my will shall transfer to such corporation all the funds and property, real, personal and mixed, belonging to my estate. My Executors in organizing the corporation shall select Mr. John R. Flippin, Mr. Holmes Sherard of Mississippi and Mr. Robert N. Lloyd, Jr., of Memphis, Tennessee as the incorporators and the first Board of Directors, As the directors die or resign, I request that the remaining directors shall fill such vancancies [sic] with suitable men of outstanding [sic] character and business ability.
The corporation when so created shall invest and reinvest the funds belonging to it until a sufficient amount has been accumulated to erect, equip and maintain the hospital which shall be built on a suitable lot in the City of Memphis, Shelby County, Tennessee which shall be bought and the hospital shall be known and designated as The William Greene Thomas Hospital.
.....
The lot to be so selected on which to erect the hospital shall not be on what is known as the Medical Center but it must be in a conspicuous and desirable location where it may be seen by all passers-by.
After the hospital building has been erected and equipped, it shall be operated by the corporation to be formed as above provided for the benefit of the sick.