492 So.2d 269 (1986)
Willard JOHNSON
v.
BOARD OF TRUSTEES of the MISSISSIPPI ANNUAL CONFERENCE of the METHODIST CHURCH (Former Central Jurisdiction).
No. 54716.
Supreme Court of Mississippi.
July 16, 1986.
John A. Nichols, Jackson, for appellant.
Lawrence W. Rabb, Martha Gerald, Gerald, Brand, Watters, Cox & Hemleben, Jackson, for appellee.
En Banc.
SULLIVAN, Justice, for the Court:
By will dated December 15, 1954, Mrs. Georgie Hodges devised certain real property in Jackson to appellee's predecessor, The Methodist Conference, in trust "for the benefit of needy colored children". Mrs. Hodges' will directed that the property not be sold for ten years, with the income therefrom to be used as a scholarship fund for the education of colored children. The will stated that if it should appear to be in the best interest of the purpose of the trust that the property be sold, then it may be sold by decree of the Chancery Court of *270 Hinds County, with the proceeds to be invested and "the income therefrom used as an educational fund for colored children, or for some similar use or purpose for the betterment of the members of the colored race."
On August 18, 1965, Mrs. Hodges entered into a ground lease and agreement with Joe Dehmer Distributor, Inc., covering the property in question. The lease was for a primary term of five years, and contained an option to renew for four successive five year terms. The lease contemplated the construction by Dehmer of a gasoline service station, which structure would become the property of the lessor upon termination of the lease, except for equipment installed by the lessee. On March 5, 1966, Willard Johnson entered into a sublease from Dehmer for the gasoline station and surrounding premises.
On February 12, 1967, Mrs. Hodges died and her will was probated on February 20th. In the decree probating the will, the court found that Mrs. Hodges left surviving her as her sole and only heirs at law: Laura Walker Connor, Charles Walker and Johnnie Walker, all cousins of Mrs. Hodges. Pursuant to Mrs. Hodges' will, the property in question was devised in trust to The Mississippi Annual Conference of the Methodist Church, appellee's predecessor. The devisee held the property subject to the lease and the rent proceeds from this lease were administered as a trust to provide scholarships for black students in accordance with the terms of her will.
In 1980, Willard Johnson began to negotiate with the church to purchase clear title to the property for himself for $26,000. When title was examined, the title company raised questions about the mortmain statute and the deal was not closed because the question arose as to who owned the property. Instead, on September 10, 1980, Johnson obtained a quitclaim deed from the heirs of Mrs. Hodges, mentioned above, for which he paid $14,000.
Johnson then filed a bill to confirm title, to remove cloud on title, and for other relief against the appellee. Johnson claimed that the mortmain statute applied to the trust in Mrs. Hodges' will and the appellee's retention of title to the property for over ten years caused title to revert to the heirs and through the quitclaim deed to him. He asked that title be confirmed in him and that the appellee's claim of title be canceled. Finally, he asked for an accounting and delivery to him of all monies received under the Dehmer lease after February 12, 1977.
The appellee's answer claimed non-possessory or incorporeal rights, namely the right to collect rents under the lease and will of Mrs. Hodges which would mature into full title at the termination of the lease. They denied that this arrangement violated the constitutional and statutory mortmain prohibitions. Next, the defendants relied upon the provision in Mrs. Hodges' will directing the chancery court to apply the "cy-pres doctrine" in the event that the trust was invalidated by a court so that, nevertheless, the subject property would be disposed of in trust for "the betterment of the members of the colored race" and not for heirs or assignees of the alleged heirs such as Johnson. The appellee also alleged that Johnson had no standing to bring this suit, not being an heir nor a devisee of the testatrix, as such rights as those parties have under mortmain law are personal and not assignable. Last, the appellee alleged that the trust in Mrs. Hodges' will is not one prohibited by the mortmain law since the appellee was selected to administer a trust wherein for ten years the proceeds of the rental income from the property would be used for a scholarship fund for the education of black students and thereafter the income from the property was to be used as "an educational fund for colored children or for similar use or purpose for the betterment of members of the colored race".
The trial court rendered an opinion denying all relief requested by Johnson. The court was of the opinion that the devise became effective on the date of Mrs. Hodges' death. The court found that the argument that the plaintiff lacked standing to *271 bring the suit was without merit, based on Mississippi College v. May, 235 Miss. 200, 108 So.2d 703 (1959). Finally, the court found that the trust established under Mrs. Hodges' will was not a trust prohibited by the constitutional and statutory mortmain provisions. The court noted that in Mississippi College v. May, supra, the trustee and the beneficiary were one and the same. Also, the court relied upon Crook v. Commercial National Bank and Trust Co., 375 So.2d 1006 (Miss. 1979), in which the Supreme Court upheld a trust administered by a bank for the benefit of testator's brother and upon his death for the benefit of The East Mississippi Insane Asylum. Applying the test set forth in Crook, the chancellor concluded that the trust in Mrs. Hodges' will did not violate the mortmain statute because the appellee does not share in the income or benefit therefrom since the income is used as an educational fund for black students. Johnson appealed and the appellee has filed a cross-appeal. The following questions are raised:

I.

DID THE COURT ERR IN HOLDING THAT THE DEVISE TO APPELLEE'S PREDECESSOR WAS NOT SUBJECT TO THE MORTMAIN REQUIREMENT THAT THE DEVISED LAND BE SOLD WITHIN TEN YEARS OF THE EFFECTIVE DATE OF THE DEVISE?
Involved are the constitutional and statutory mortmain provisions of Mississippi law. Section 270 of the Mississippi Constitution (1890) provides:
Section 270. No person leaving a spouse or child, or descendants of child shall, by will, bequeath or devise more than one-third of his estate to any charitable, religious, educational or civil institutions, to the exclusion of such spouse or child, or descendants of child, and in all cases the will containing such bequest or devise must be executed at least ninety days before the death of the testator, or such bequest or devise shall be void.
Provided, however, that any land devised, not in violation of this section, to any charitable, religious, educational, or civil institution may be legally owned, and further may be held by the devisee for a period of not longer than ten years after such devise becomes effective, during which time such land and improvements thereon shall be taxed as any other land held by any other person, unless exempted by some specific statute.
Section 270 of the Constitution is codified almost verbatim in Mississippi Code Annotated Section 91-5-31 (1972), with the addition of the following paragraph:
Provided further, that within said period of ten years during which such land may be held, the charitable, religious, educational, or civil institution holding the same shall have the power and right to sell and convey the said lands so held, or any part thereof; and its deed of conveyance may be treated as passing such title thereto as was possessed by the testator, or the said land, or any part thereof, may be leased for a length of time not extending beyond the expiration of the period during which it may be legally held by the lessor institution. If such land be not sold and disposed of within the said period of ten years, then in that event, at the expiration of the said period of ten years, it shall revert to the heirs at law of the testator under whose will it was devised to the institution holding it, or to the devisees under such will, as the case may be.
More particular, the application of the ten year limitation on a proscribed institution's holding of land and the accompanying reverter clause is at issue.
The crux of Johnson's argument is that the lower court misinterpreted Crook, supra. We agree. Two other cases dealing with Mississippi's mortmain law lay the foundation for this holding.
The first is Mississippi College v. May, 235 Miss. 200, 108 So.2d 703 (Miss. 1959). In this case, Dr. May had died testate in 1940 with no spouse, children or grandchildren surviving him. His will devised to *272 Mississippi College a 465 acre farm. The will further provided that at the proper time the farm was to be converted into cash which was to be held as a "perpetual trust fund or endowment" for the support of Christian education at Mississippi College. Ten years expired but Mississippi College had not sold the land. The heirs of Dr. May filed a complaint charging that, upon expiration of the ten years, the land immediately reverted to them pursuant to the mortmain statute. General demurrers filed by the College and the other defendants were overruled, from which an interlocutory appeal was taken.
The Court, speaking through Justice Ethridge, held that the second paragraphs of the constitutional and statutory mortmain provisions, "prevent[ed] Mississippi College from owning and holding the lands devised to it by Dr. May for more than ten years. We think this is their clear intent and purpose." 108 So.2d at 708.
The Court interpreted the second paragraph of section 270 of the Constitution as creating in the devisee an "estate for ten years". 108 So.2d at 708. Later in the opinion, in response to a presently unrelated argument, the Court further explained the estate created in the "institutional devisee", Mississippi College: "The Constitution and the statute, read together, create in the College an estate for ten years, with a power of disposition in the College. The heirs or devisees of the estator (sic) have a vested remainder, subject to defeasance by the College exercising its power of disposition." 108 So.2d at 711.
In response to the argument that Section 270 was not applicable since the devise to Mississippi College was in trust, the Court held the following:
In brief, although Item IV has terms indicating a trust in the College for the benefit of students at the College obtaining scholarships, the creation of a trust in land to an institution within the prohibition of the Constitution Sec. 270, where the proceeds are to be used for some of the purposes for which the institution was created, does not take the devise out of Sec. 270. The manifest purpose of the Constitution is to the contrary... . Otherwise the objective of Sec. 270 could very easily be nullified.
Id. at 710.
It should not be assumed, without the Court expressly holding, that the inverse of the above is the law of this state, that is, that a devise of land in trust to a proscribed institution, where the proceeds are not to be used for some of the purposes for which the institution was created, is outside of the application of the mortmain laws. Justice Hall was astute on this point when, in his concurring opinion, he stated the following:
I am unwilling to give my assent to any subterfuge whereby the effect of Sec. 270 can be nullified, especially on the theory that the land is merely held in trust and may be held indefinitely. If we should ever accept such a theory, we would simply be repealing Sec. 270 in toto, which I am unwilling to do.
Id. at 715.
The next case is Methodist Hospital v. Slack, 330 So.2d 882 (Miss. 1976). In this case, Mamie M. Thomas had died testate in 1958. At her death, she owned an undivided interest in a Yazoo County plantation which amounted to approximately 500 acres. She devised this interest to Union Planters National Bank of Memphis, Tennessee, as trustee. The trust was to last for fifteen years with the revenue from the land becoming part of the residue of her estate and pass pursuant to the residuary clause, which provided that the residue and remainder of her estate, real and personal, was to go to Methodist Hospital of Memphis upon their acceptance. The hospital had ten years from her death to accept. They accepted in 1963. After the expiration of the 15-year trust period, in 1974, the Bank conveyed the interest to the Hospital.
The Court noted that, after accepting the devise, the interest in the plantation would pass to the Hospital at the expiration of the 15-year trust period. The Court also *273 found that the trustee had no power to sell the interest.
In other words, upon acceptance, the Hospital became vested with a remainder interest in the plantation.
The Court, speaking through Justice Walker, quoted with approval the above quote from Justice Hall's concurring opinion concerning his opposition to "using a trust to circumvent the effect of Section 270 of the Constitution". Id. at 889. The Court went on to find that the obvious purpose of the trust was to circumvent the 10-year limitation of Section 270. The Court held that to allow this "would nullify what the Court has declared to be one of the fundamental purposes of Section 270 of the Constitution"; that being, "to prevent the undue accumulation of lands in certain classes of institutions." Id. at 889. The Court concluded that the lower court's overruling of the Hospital's general demurrer was not error.
Finally, the case upon which the lower court relied, Crook v. Commercial National Bank & Trust Co., 375 So.2d 1006 (Miss. 1979), came before this Court in 1979. The entire text of the will at issue in that case was as follows:
I, Charles S. Weems, hereby will and deed to Commercial National Bank and Trust Company, Laurel, Mississippi, in trust my entire estate, real and personal and all monies to be made a trust fund for my brother Talmage Dewitt Weems at present a patient in the East Mississippi Insane Hospital, Meridian, Miss. I give to Talmage D. Weems, the entire income from this trust fund after Talmage D. Weems death, I give the income from this trust fund to the East Insane Asylum, Meridian, Miss. to buy things for needy patients that the State does not buy. I appoint the Commercial National Bank and Trust Company, Laurel, Miss., administrator and guardian for Talmage Dewitt Weems.
I solemly (sic) and affirmly swear this is my last will and testament.
Id. at 1008.
The appellants in Crook were the sole surviving heirs of the two brothers mentioned in the will and contended that the will set up a trust in a nonproscribed institution for the benefit of a proscribed one, and the mortmain provisions were violated when the trustee held the real property for more than ten years after the death of the testator's brother; therefore, the property reverted to them.
Again, the mortmain purpose of preventing the accumulation, by devise, of excessive quantities of land in proscribed institutions was the concern of the Court as it is in the case sub judice. The Court, again speaking through Justice Walker, analyzed the changes that had been made in Mississippi's constitutional mortmain provisions. Id. at 1008-09. The Court concluded as follows:
It is our opinion that the purpose of the change was to continue the prohibition against the holding, for more than ten years, of land devised to proscribed institutions, but at the same time to relax the prohibition against placing land in trust for the benefit of a proscribed institution. However, the trust arrangement must not be such as to circumvent the mortmain laws by leaving the ultimate control of the land in a proscribed institution, as the alleged trust in Mississippi College v. May, 235 Miss. 200, 108 So.2d 703 (1959), would have done and as did the trust in Methodist Hospital, supra.

Id. at 1009.
The Court distinguished Mississippi College, supra, since there the land had been devised directly to the proscribed institution. The Court noted that in Mississippi College the devise had not been construed to be in the form of a trust and that the Court's language concerning a devise to a proscribed institution for the very purpose for which it was organized was in direct response to the contentions raised by the appellants. Id. at 1010.
This is further support to rebut the argument that the Mississippi College case is authority for the proposition that a devise in trust to a proscribed institution is in *274 violation of the mortmain laws only if the proceeds of the trust are to go to the very purpose for which the trustee is organized.
The Court also distinguished Methodist Hospital, supra, pointing out that the "decisive factor which caused this arrangement to fail was that ... [the] title to [the land] ... was to pass to Methodist Hospital after fifteen years. The trustee could not ... sell ...". Id. at 1011.
The Court concluded that the trust arrangement before them did not violate the mortmain provisions. The following reasons were given:
(1) The trustee of the Weems' trust is not the trustee, owner or management of the East Mississippi State Hospital, as would have been the case if the Court had held that a trust existed in Mississippi College v. May, supra, (2) the devise of the property under the Weems' will contains no restriction upon alienation by the trustee of the property devised to it as did the trust in Methodist Hospital. The trustee, therefore, was charged with the same duty as any other trustee holding property for the generation of income, to deal with the property as would any prudent manager of that type trust estate. This duty would require the trustee in the exercise of reasonable and prudent management, unless instructed otherwise by the terms of the trust, to sell or otherwise dispose of the trust property, if prudent management so dictated. Therefore, there does not exist the danger of the real property being arbitrarily held for an indefinite period.
Moreover, the beneficiary of the proceeds from the trust would have no right to possession of, nor have any control over the management or disposition of, the property. Therefore, there is no fear that large amounts of real property will accumulate under the control of a proscribed institution.
The Court then set out a test to determine when land or real property may be left in a charitable testamentary trust without being subjected to the mortmain requirement that the property must be sold within ten years:
We are therefore of the opinion that land or real property may be left in a charitable testamentary trust created by the testator's own will without being subjected to the mortmain requirement that the property must be sold within ten years, provided that (1) there are no restrictions placed on the trustee with reference to the alienation of such property, and (2) such property shall not pass to a proscribed institution after the expiration of the trust or prior thereto except by a direct arms-length sale, and (3) the trustee shall be charged with the duty, as provided by law, that he deal with and manage the property as any prudent trustee would, including selling or disposing thereof as prudence would dictate, and (4) the trustee or trustees are not the same owners, management or trustees of a proscribed institution which is designated to share in the income or benefits of the trust.
We feel that this construction of the mortmain constitutional provisions and statutes satisfies the letter of the law as well as its spirit and intent.
Id. at 1011-12.
We do not write this opinion to do away with the above 4-part test. We do think, however, that an explanation of the applicability of the test is necessary.
The testamentary trust in Crook did not violate the mortmain laws for the simple reason that the proscribed institution, though a beneficiary of the trust, did not have an interest, present or future, in the land devised by the testator.
The interest of beneficiaries who have, under the terms of the trust agreement, no right, title, or interest in the realty as such, either legal or equitable, but only an interest in the earnings and proceeds ..., and the right to receive proceeds from rentals, which right is to be deemed personal property, is personal property only and not real estate.
90 C.J.S. Trusts § 186, 79 (1955). See Calhoun v. Markow, 168 Miss. 556, 151 So. *275 547 (1933); Mitchell v. Choctaw Bank, 107 Miss. 314, 65 So. 278 (1914).
The proscribed institution in Crook did not have a conveyable interest in the land owned by the testator at his death; only a right to receive the income derived from the corpus of the trust, whatever it might have been. Compare Mississippi College, supra, and Methodist Hospital, supra.
The question now becomes, what purpose does the test set forth in Crook serve?
Reaffirming the conclusion in Crook that the "mortmain laws do not condemn all trusts containing land that may be held indefinitely for the benefit of charitable, religious, educational or civil institutions but are to prevent the accumulation of lands under the control of those institutions by devise", Crook at 1009, we are faced with the forewarnings in Justice Hall's concurring opinion in Mississippi College concerning "subterfuge[s] whereby the effect of Sec. 270 can be nullified, especially on the theory that the land is merely held in trust and may be held indefinitely." 108 So.2d at 715. The numerous trust devices which may be attempted to circumvent the mortmain laws are obvious.
Keeping in mind one of the purposes of the mortmain laws  to prevent accumulation, by devise, of excessive quantities of land in proscribed institutions  some guidelines are needed to prevent frustration of this purpose though there may not be a violation of the letter of the law per se. The test set forth in Crook does just that. Therefore, as an example only, if a proscribed institution appears to have only a beneficial income interest in the corpus of the trust but one of the prongs of the Crook test is not met, the 10-year limitation of the mortmain statute is applicable.
We realize that the line between when a beneficiary only has an income interest and when he has an identifiable interest in land can be blurry. However, in relation to this aspect of the mortmain laws and if the right circumstances exist, the Crook test, though not making it any clearer, can make the demarcation unnecessary. If, however, a clearly identifiable interest in land exists in the proscribed institution, the test has no applicability.
In Crook, the trust did not flunk the test. In the case sub judice, the right circumstances do not even exist for the test to be applicable. The test serves the purpose of determining the applicability of the mortmain laws to a trust when otherwise such may not be clear. It does not take trusts out from the confines of the mortmain law when they are clearly within the purviews of such.
Appellee's predecessor was devised the land in trust; therefore, taking legal title as trustee with equitable title going to the beneficiaries. However, "at law, the legal estate in the trustee possesses the same properties, characteristics, and incidents as if [it] ... were the absolute owner." 90 C.J.S. Trusts, § 180, 68 (1955). Therefore, appellee's predecessor, being a proscribed institution, took an estate for 10 years with a power of disposition. This power was not exercised within 10 years. At the end of such period, the reverter clause of § 91-5-31 became applicable and the land reverted to the testator's heirs at law or to the devisees under the will free of the trust.
By virtue of the quitclaim deed from Mrs. Hodges' heirs, the land reverted to Johnson. Any other holding would completely frustrate the purpose of the mortmain laws in preventing accumulation, by devise, of excessive quantities of land in proscribed institutions.
We should point out that Johnson takes here only because the residuary devisee under Mrs. Hodges' will was also a proscribed institution. Mississippi College, 108 So.2d at 711-12. We also point out that we do not reach the issue of what steps the chancery court could have taken to save the disposition and ensure that its benevolent purpose was fulfilled, either pursuant to the will itself or under the court's inherent authority, since application for such was not made before the 10 year lapse which vested title to the property in Johnson. Compare Estate of Bunch v. Heirs of Bunch, 485 So.2d 284 (Miss. 1985).

*276 II.

DID THE COURT ERR IN NOT FINDING AND HOLDING THAT THE RENTS COLLECTED BY THE APPELLEE FROM AND AFTER FEBRUARY 12, 1977, WERE THE PROPERTY OF THE HEIRS AT LAW OF MRS. GEORGIE HODGES AND ARE THE PROPERTY OF JOHNSON?
The effect of the lease between Hodges and Johnson's predecessor in interest, Dehmer, was to carve out of the fee simple absolute owned by Hodges an estate for years which became personal property of Dehmer's. Hodges was left with a reversion in fee simple which was freely transferable. C. Moynihan, Introduction to the Law of Real Property, ch. 3, secs. 1 and 4 (1962).
Rents accrued after the death of a testatrix are the property of the devisees of the land from which they accrued. "In the absence of directions to the contrary in the will, the [devisees]... have the same interest in the income, rents, and profits of the property given them as they have in the property itself." Gaines v. Klein, 203 Miss. 271, 276, 34 So.2d 489, 491 (1948).
At Hodges' death, she owned a reversion in fee simple absolute with the inherent right to receive the rents. She devised this interest to the appellee in trust. The appellee had an estate for ten years in the reversion with a power of disposition. During this time, it also had the right to receive the rents which accrued from the land.
At the end of the ten years, however, the reversion in fee simple absolute with the inherent right to receive the rents automatically reverted to Johnson by virtue of the quitclaim deed from Hodges' heirs at law.
It is not clear from Mrs. Hodges' will that she intended to separately bequeath, apart from the devise of the land itself, the right to receive rents from the subject land, as is argued by the appellee. The plain intention gathered from the language of the clause in question is to the contrary. It was an intent to devise the land to the appellee in trust with the "income [or rents] therefrom to be used as a scholarship fund for the education of colored children." We are not at liberty to infer an intent different from that clearly shown by the language of the will despite the Court's favorable disposition toward charitable gifts, at least when to do so would be in direct conflict with the constitutional and statutory mortmain provisions. But compare Estate of Bunch, supra.
Johnson is entitled to the rents which were collected from and after February 12, 1977, which was the tenth anniversary of Mrs. Hodges' death. The appellee is entitled to a credit for the advalorem taxes paid by it since that time.

III.

DID THE COURT ERR IN FINDING THAT THE DEVISE TO THE APPELLEE BECAME EFFECTIVE, WITHIN THE MEANING OF THE MORTMAIN STATUTE, AS OF THE DEATH OF MRS. GEORGIE HODGES, RATHER THAN AT THE TERMINATION OF THE TWENTY-FIVE YEAR DEHMER LEASE?
The appellee has cross-appealed and assigned this question. Though the first part of the opinion should answer this, we will discuss it briefly.
It is hornbook law that a will speaks at the death of the testator. All the interests in land which are created by the will become effective at the death of the testator. This is nevertheless true though the interest initially created may eventually become a greater or more definite interest. Mississippi College v. May, 108 So.2d at 712. See also Beach v. State, 178 Miss. 336, 173 So. 429 (1937); Cooksey v. State, 175 Miss. 82, 166 So. 388 (1936).
In Mississippi College v. May, supra, the Court was faced with the question of whether an arguable residuary devisee, who was also a proscribed institution, should be able to hold the land for an *277 additional ten year period at the end of Mississippi College's ten. The Court held that the remainder to the residuary devisee, as well as the interest in Mississippi College, became effective upon the death of Dr. May. The Court concluded that the ten years began running against both at the death of Dr. May.
Certainly this is dispositive of when the ten-year period begins to run against a devisee who takes the land subject only to a lease with full rights to receive the rents therefrom. The chancellor was correct in this regard.
We reverse and remand this case with directions that title to the property be confirmed in Johnson as of February 12, 1977. The lower court should determine the amount of rents that have accrued to, and been collected by, the appellee since February 12, 1977. The appellee is to be ordered to pay Johnson all the rents collected by it since that time, less the amount of any ad valorem taxes paid on the property by the appellee during the same time.
We are mindful of the generous and beneficial contribution that Mrs. Hodges attempted to make. In this regard, however, it is appropriate to end this opinion with a quote from Mississippi College v. May, supra:
The Constitution and statutes hold the highest claim on the power of this Court. Their demands transcend any ideas which we might hold individually as to what is wise or unwise. We decide this case on the basis of what seems to us to be the plain intention of the statute and the manifest purpose of the Constitution.
108 So.2d at 712.
REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., DAN M. LEE, PRATHER, ROBERTSON and GRIFFIN, JJ., concur.
ANDERSON, J., not participating.