# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01364-COA

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF SARAH W. WALKER, DECEASED: SCOTT O. WALKER, AS EXECUTOR AND INDIVIDUALLY, TRUDY BUSH AND WENDY KING | APPELLANTS |

v.

| | |
|---|---|
| SANDRA W. BROWN AND TRACY WALKER | APPELLEES |

| | |
|---|---|
| DATE OF JUDGMENT: | 07/31/2018 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | F. HALL BAILEY |
| ATTORNEYS FOR APPELLEES: | PAMELA L. HANCOCK JEFFREY BRYAN MCGUIRE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 05/19/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., TINDELL AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. This case involves the contested will of Sarah Walker. In her will, Sarah left all of her real and personal property in equal shares to her five adult children—Scott Walker (the executor of the will), Tracy Walker, Trudy Bush, Sandra Brown, and Wendy King—"less any debt owing to me by any heir at the time of my death, to come out of that child's part." Following her death, Sarah's will was admitted to probate. Several months later, Brown filed a "Motion for Disbursement of Funds and Motion to Close Estate." Scott filed a cross-claim

for a declaratory judgment, claiming that Brown's debt should be deducted from her inheritance. Ultimately, the chancery court found that because Brown's debt was not specified in Sarah's will, she was owed an equal share. Scott, Bush, and King appealed on behalf of Sarah's estate. After review, we find the chancery court should have considered evidence outside of the will to determine the children's possible debt, as it was Sarah's clear testamentary intent to deduct any debt owed from each child's share. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**FACTS**

¶2. On October 5, 2006, Sarah executed her will, which contained the following provision:

> I have five adult children, sons namely: Scott O. Walker and Tracy L. Walker; and three daughters, namely: Trudy W. Bush, Sandra W. Brown and Wendy W. King, to whom I leave in equal shares, property I possess, whether real, personal or mixed (less any debt owing to me by any heir at the time of my death, to come out of that child's part).

¶3. On July 16, 2007, Sarah prepared a written statement of the amounts each child owed her as of that particular date and had the signed statement notarized. Sarah wrote that Scott owed her $0, Bush owed her $1,225, Brown owed her $85,644.33, King owed her $7,294.57, and Tracy owed her $0.

¶4. Sarah died on April 30, 2016. As executor of Sarah's will, Scott filed a petition for probate of Sarah's will, which the court granted on June 9, 2016. On October 14, 2016, Scott filed a "Petition for Authority to Liquidate Certain Assets of Estate," which was joined by

2

all the siblings. The court granted the petition, and Scott subsequently accumulated all of Sarah's property and liquidated her assets prior to distribution. The majority of Sarah's assets were cash funds in the estate's checking account.

¶5.     In accordance with Sarah's will, Scott also sought to determine how much debt each sibling owed Sarah at the time of her death. Scott requested that each sibling provide accounting information to determine if anyone had borrowed additional funds from Sarah since the July 16, 2007 statement of accounts. All the siblings complied except Brown. Scott, Tracy, Bush, and King had borrowed no money since the July 16, 2007 statement. Bush and King stated they each still owed the debt listed in the July 16, 2007 statement.

¶6.     On November 28, 2016, Brown filed a Motion for Distribution of Assets and to Close Estate. Through her motion, Brown requested that the court provide an inventory of assets, to make a distribution of the assets of the Sarah's estate, and then to close the estate.

¶7.     On December 16, 2016, Scott filed a cross-claim for declaratory judgment within the estate proceeding consistent with Rule 57(b)(3)(c) of the Mississippi Rules of Civil Procedure. In his motion, Scott stated there was a "question arising within the administration of an estate, and in particular, involving a question of construction of will." Scott sought a declaration to confirm that, as executor of Sarah's will, he was "entitled to deduct from a child's **pro rata** share of the [e]state any debt that child owed to decedent . . . at the time of her death . . . without consideration of possible successful assertion of an affirmative defense to the debt based on statute of limitations." (Emphasis added). Specifically, Scott requested

3

that he be allowed to use documents outside of the will, such as the July 16, 2007 document, to determine each child's debt. Scott claimed that Brown "by and through her counsel, ha[d] denied the amount of debt . . . be deducted from her pro rata share of the [e]state since the debt is more than three years old and would be presumably barred by the statute of limitations."

¶8.     The court held a hearing on Scott's cross-claim on June 14, 2017. Sarah's attorney, Tom Sanford, testified that he drafted Sarah's will. He stated that the will did not originally contain the language "less any debt owing to me by any heir at the time of my death, to come out of that child's part" and that Sarah added that language to a revised draft. That revised draft became the final will. Sanford also testified that he recommended that Sarah record the amount each child owed. Following their conversation, Sanford received a copy of the July 16, 2007 statement, which specified each child's debt. Sarah signed the statement and had it notarized.

¶9.     Scott testified that he and Sarah had discussed the debt provision and that he had advised her to she keep track of the amount each child owed if she wanted that provision enforced. Scott also testified that he retrieved various documents from Sarah's house after she died. Some of those documents were admitted into evidence, including Sarah's check-transaction registers, notebooks, credit-card statements, bank statements, and calendar journals dating back to 2006. The notebooks and calendar journals logged payments she made to her children. Scott also recovered the will and the July 16, 2007 statement from

Sarah's safety-deposit box.

¶10.    Scott's wife, Sheila Walker, testified that she was an accountant and began helping Sarah with her finances in 2006.  Sheila also testified that she had reviewed all of Sarah's financial documents that had previously been admitted into evidence and assembled a statement of all of Sarah's disbursements to Brown between June 25, 2002, and January 1, 2016.  At that point, Sheila's disbursement statement was admitted into evidence.  The statement showed that, since July 16, 2007, Brown had borrowed $36,856.05 from Sarah.

¶11.    Brown was present at the hearing but did not testify.[1]  Nor did she call any witnesses.

¶12.    After the June 14, 2017, hearing, the parties submitted briefs to the court on the legal issues presented by the declaratory judgment action.  On August 18, 2017, the court entered an opinion and judgment on the cross-claim for declaratory judgment.  The court stated that "[a]ny effort to give effect to the testator's notarized declaration of debts owed her by her children is fraught with pitfalls."  As a result, the court found that "the written notarized statement of the testator, dated July 16, 2007, [had] no legal effect with respect to the distribution of the estate . . . ."

¶13.    Scott timely filed a motion to alter or amend judgment.  Within that motion, Scott asked the court to reconsider its ruling that Sarah's written notarized statement, dated July 16, 2007, was not part of the will and had no legal effect with respect to the distribution of

---

[1] The record on appeal is silent as to whether Brown was present at the hearing. However, both parties stated at oral argument that Brown was in fact present.

Sarah's estate. Further, he argued that the court's ruling failed to answer the question presented to the court through the declaratory judgment action—whether Scott was able to deduct from each child's inheritance any debt that child owed to Sarah at the time of her death. Finally, he argued that the court did not consider the possible assertion of an affirmative defense based upon the statute of limitations. Scott also requested the opportunity to put on additional proof as to debts owed to Sarah by her children which were incurred prior to July 16, 2007, because the court was not going to recognize the amounts listed within the July 16, 2007 statement.

¶14. The court initially denied Scott's motion but later agreed to allow Scott a second hearing so that he could offer additional evidence and testimony. The court held a hearing on April 11, 2018. At the onset of the hearing, the parties announced, and the court agreed, that all previous testimony and evidence submitted during the June 14, 2017 hearing would be incorporated into evidence by reference. Scott testified, offering into evidence various documents, including Sarah's calendar journals from 2002 through 2006, and three more of her notebooks detailing payments to her children.

¶15. Sheila testified how she used the various exhibits to document the amounts of money loaned to Brown by Sarah prior to July 16, 2007. She further testified that based upon those documents, she was able to determine that Brown was indebted to Sarah in the amount of $48,385.08 as of July 16, 2007. The summary document itemizing her accounting to reach that amount was offered into evidence. Sheila then recounted her previous testimony from

6

the June 14, 2017 hearing, during which she testified that based upon her investigation and calculations from the documents offered into evidence, Brown had borrowed $36,856.05 from Sarah since the July 16, 2007 statement. Finally, Sheila testified that Brown owed Sarah $85,241.13 at the time of Sarah's death.

¶16. The court ultimately denied Scott's request to consider evidence outside of the will to determine each child's debt. Aggrieved, Scott, Bush, and King appealed on behalf of Sarah's estate.

## STANDARD OF REVIEW

¶17. An appellate court "applies a de novo standard of review to questions of law, including a motion for a declaratory judgment." *S.C. Co. v. Keymon*, 974 So. 2d 226, 229 (¶9) (Miss. 2008). We only disturb a chancellor's findings of fact when the chancellor applied the wrong legal standard, or the findings are manifestly wrong or clearly erroneous. *Madden v. Rhodes*, 626 So. 2d 608, 616 (Miss. 1993).

## ANALYSIS

¶18. Scott argues that the court erred in denying his request to use extrinsic documentation to determine each child's debt. In the opinion and judgment, the court stated the following:

> The Court declines to find that such document should be considered a part of, or read together with, the Last Will and Testament.
>
> . . . .
>
> Sandra accurately advises the Court that parol evidence cannot be utilized to interpret the testator's will unless the terms of the will are ambiguous. The Court specifically finds that the will is not ambiguous, and should be construed

7

and interpreted solely by the terms of and on the four corners of the will itself. The written statement of debts ostensibly owed the decedent is merely an allegation by the decedent of debts owed at a particular point in time, which point was almost nine years prior to her death.

The court found that the will was not ambiguous and any evidence concerning potential debts owed to the decedent many years prior to her death was "merely an allegation" of potential debts owed. The court refused to consider the debts owed because they were not listed "within the four corners of the will." Finally, the court ruled that Scott was not allowed to deduct any debt that was not "contained within the will itself."

¶19. "Our polestar consideration, as always, is the intent of the testator, the right our law has given each competent adult to direct from the grave the disposition of [her] worldly goods." *Tinnin v. First United Bank of Miss.*, 502 So. 2d 659, 667 (Miss. 1987). It is well established that "a will speaks at the death of the testator." *Johnson v. Bd. of Trs. Miss. Annual Conference Methodist Church*, 492 So. 2d 269, 276 (Miss. 1986); *see also* Robert A. Weems, Mississippi Practice Series: Wills & Admin. of Estates in Mississippi § 9-4, at 296 (3d ed. 2003). Further, a testator's will should be enforced so as to avoid clearly unintended consequences. *Johnson*, 492 So. 2d at 276.

¶20. It is true that "[i]n determining the testator's intent, in the absence of ambiguity, this Court is limited to the 'four corners' of the will itself." *Estate of Blount v. Papps*, 611 So. 2d 862, 866 (Miss. 1992). The plain language of the will shows it was clearly Sarah's intention to have each child's debt deducted from his or her share. That intent was further evidenced by witness testimony. Sanford testified that Sarah added the debt provision in a

8

revised draft to the original will and her clear intent was for each child to receive as equal share minus any debts owed to Sarah. Scott testified that he and Sarah had conversations about that provision and that he encouraged her to keep track of each child's debt. Thereafter, Sarah created the July 16, 2007, statement, which neither party disputes she drafted.

¶21. Brown did not testify at the hearings but complains through pleadings that the debts should not be considered since those debts are not within the four corners of the will. That argument is misplaced. Under such a provision, if the testator were required to offset each child's equal estate with those debts only listed in the will, every loan to a child would necessitate a new will or at least another codicil. In this case, the testator's intent was clear. The testator wanted each child to receive a total equal share of her property, whether that share was accumulated by loans during the life of the testator or by the will after the death of the testator. Because each child was to receive an equal share, if a child had borrowed money from the testator during her life, those loans would be deducted to ensure each child had an equal share at her death. That clear intent would be subverted if a child could borrow from the testator throughout life and then receive an equal share of what was left of the estate upon the death of the testator. To hold otherwise would allow one child to obtain unfair and unequal parts of the estate to the detriment of the other children's shares by simply obtaining loans.

¶22. The evidence was not offered to modify the terms of the will. Rather, it was offered

to give effect to the clear intent expressed in the will. Therefore, the court should have factually determined if the evidence was credible and sufficient to prove the existence of debts or not and then acted accordingly consistent with the clear and unambiguous terms of the will. After review, we find that the July 16, 2007, statement, the calendar entries, and other documents offered into evidence, as well the testimony of witnesses, were evidence which should have been considered by the chancery court in an effort to determine the potential debt each child may have owed to Sarah. Thus, the chancellor should have considered the credibility and the sufficiency of the evidence offered and made factual findings as to each child's debt, if any, to Sarah and then give the effect each deserved under the clear language of the will.

¶23. Brown also argues that any debt she owed as stated in the July 16, 2007, document is more than three years old, and therefore any collection of that debt would be barred by the statute of limitations. *See* Miss. Code Ann. § 15-1-29 (Rev. 2012). Brown's argument is misplaced. The estate is not trying to *collect* any amount from Brown. Rather, the estate is simply trying to *deduct* that debt from her share of the inheritance.

¶24. We find that the chancery court should have considered the evidence outside of the will to fulfill Sarah's clear intent to have each child's debt deducted from his or her share of the estate upon her death. Accordingly, we reverse the chancery court's ruling and judgment and remand this case to the chancery court to determine what amount, if any, should be deducted from each child's share in order to give legal effect to the clear intent of the

testator.

¶25.   **REVERSED AND REMANDED.**

   **BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR.**